RECEIVED

AUG 2 4 2015

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

United States District Court

Northern District of Mississippi

James Everett Dutschke    - Petitioner

v.                                          1:13-CR-00081-SA-DAS

United States of America    - Respondent

Petitioner's Traverse Reply to government's Response
to Motion under 28 USC §2255

Comes now, James Everett Dutschke, Petitioner, and files
his objections, corrections and traverse reply to the government's
response to the petitioners motion of 28 USC §2255 and
in support states as follows:

I    Petitioner Dutschke first raises very strong objections to
the respondents improper rhetoric, guised in the first four
(4) pages of this particular governments response as "factual
and procedural history."

    There is very little about it that is, in fact, factual
and it is crafted merely to influence and prejudice the reader.
    We are all familiar with the movie, "The Shining" where we
have all witnessed Jack Nicholson attacking people with an axe; but
playing that movie over and over again does not actually make
Mr. Nicholson an axe murderer.

A - The "background" provided by this particular governments
prosecutors contains their constantly repeated false claims

that are equally as fictitious as that movie.

In their predictable, repetitive uttering of such prejudicial fiction here ( thereby forcing petitioner Dutschke to respond, again debunking their trifling absurdities, lest some court assume their fiction is legally true), they waste everyone's time, including this Court, with their improper acts that have no relevancy whatsoever to the 2255 petition, at hand, which was appropriately very limited to the petitioners False conviction of 18 USC §175. Nothing else.

This particular government should have been equally as focused in its response instead of merely repeating their same, already debunked and irrelevant claims that have NO legal truth behind them.

Briefly — There is NO conviction of 18 USC §175 violations committed while held in Lafayette Detention Center. There is NO adjudication whatsoever in such a matter and as such, it does NOT legally exist. It did NOT legally happen!

"Indictment is NOT evidence of guilt, nor does it detract in ANY degree from presumption of innocence..."

There was no plea or adjudication otherwise so innocence stands.

United States v. Foster (1949, DC NY), aff'd (1950 C12 NY)
183 F. 2d 201 aff'd (1951), 341 US. Supreme Ct. 494 L. Ed 1137
71 Supreme Ct 20 and reh den (1958) 355 US 936, 2 L Ed 2d 419
78 Supreme Ct 409.

Patterson v. United States (1950, CA5 Tex) 183 F. 2d 687

Toz v. United States (1943) 319 US 463, 87 L Ed 1519, 63 S. Ct 1241

2

United States v Molin (1965, DC Mass) 244 F. Supp 1015

United States v Photogrammetric Data Svc (2001, CA4 Va)

259 F3d 229, 56 Fed Rules Evid. Serv. 1185

Nor can indictment "aid presumptions and inferences"

United States v. Bruno (1955, ND Ill) 144 F. Supp 593

Therefore the repetitive inclusion of such legally untrue claims are prejudicial and by its very nature, not merely improper but illegal and sanctionable act. This government should be above such tactics.

Additionally, there is NO conviction of any kind of "witness intimidation" or "cell phone smuggling" or the ridiculous, almost laughable claim of some 'murder-for-hire' plot of any kind whatsoever. Utter nonsense. Therefore it does NOT legally exist and should never again appear in the documents prepared by this particular government for the sole sake of hoping the deciding judge will repeat these same paltry untruths in the filing of the decision.

This particular government's bald assertions remove from themselves and transfer the burden of proof. The United States Supreme Court cases affirming that the government can not EVER transfer the Constitutional burden of proof requirement is nearly limitless and most certainly too long to list; however the 5th Circuit has a long established legacy of respecting the U.S. Constitution and the United States Supreme Court in preventing exactly these kinds of prosecutorial abuses.

"unsworn assertions by government attorneys (or agents) do not provide" any "sufficiently reliable basis"

3

United States v. Johnson, 823 F. 2d 840, 842 (5th Cir, 1987)

United States v Elwood 999 F 2d 814, 817-818 (5th Cir 1993)

United States v. Patterson 962 F 2d 409, 415 (5th Cir, 1992)

It is a pathetic shame that this particular governments team of prosecutors, officers of the court, either don't know that well established part of law (called Due Process) or chooses to ignore it.

In this particular case, not even the Grand Jury agrees with these prosecutor's absurd mantra, since there is not even a single indictment, NOT even a formal criminal complaint! There is no hearing or court document of any kind to support their fatuous claims, yet they continue to do it and get away with it. Although it does not legally or factually exist, these particular government agents apparently think that simply claiming something over and over, no matter how inane, like a skipping record will somehow make it magically real; but fiction remains fiction no matter how often a movie is re-run.

And their particular fiction is so brazen that it would make NBC anchor Brian Williams proud.

This petition, and its proceedings which should follow, were not intended to address, nor is it the appropriate place to address, their repeated falsehoods. Such nonsense should be reserved for the proper due process venue, and later — but most certainly should never find their way into perpetuity by way of a judge's ruling documents. Enlisting a U.S. Federal Judge to repeat unestablished and legally untrue claims is an abuse of the system and clearly denies due process. (see above rulings)

This must stop!

B - Other incorrect statements by the respondent requiring correction:

1 - From page 1 - "charging him with possessing and using ricin in violation of 18 USC §175 (a).

    a - The actual language, as written, of 18 §175 does NOT actually criminalize "use" at all (as 229 does), just 'possession, production or stockpiling' Although it is a minor point, it seems to be one of untruths that keeps finding its way into their documents. Perhaps the prosecutors should actually read the statute.

2 - From page 3 - The 2255 petition was NOT filed on April 27, 2015 as claimed by this particular governments agents, but on 4-16-15.

    a - The Supreme Court decided (Houston v. Lack) and the 2004 revision of §2255 Rule 3(d) clearly states that a motion is deemed filed as of the time the prisoner deposits the motion into the prison mail system (which was 4-16-15).

3 - From page 3 - Repeating the false statements of the 'factual basis' - objected to at sentencing by the petitioner. Those things in the "factual basis" are just as untrue now as when the PSR was prepared (and objected to); including their fatuous claim that the petitioners computer contained "evidence of research on the production of ricin", and their untrue nonsense above printers and address labels and such. When prosecutors simply regurgitate unproven and fallicious misinformation in court or court documents, presenting their obvious fiction as "fact", the entire justice system loses all

credibility. Why bother having judges, Courts or any Fact-Finding system at all, then? Such tactics are necessarily unacceptable in a Fair court and under a Fair system.

Petitioner Dutschke must ask that, For the purposes of this petition and hearing, and to serve the Far greater purpose of preserving the eroding concept of Due Process and the Constitution, the cornerstone of a once-revered system designed to actually be just, the arguments and Facts presented be appropriately limited and relevant to the actual discussions contained within the 2255 petition itself, which is necessarily specific to the False conviction of 18 USC §175 and nothing more.

**II** There are no bars on procedural grounds with any standing.

This particular government's immense team of lawyers devotes the next several pages (5-11) of the response to what seems like their typical pro-forma, 'fill in the blank' standard template they undoubtably fire against every other §2255 to prevent on procedural grounds any possibility of a fair hearing. In essence, they lay out, in a nearly pre-programmed fashion, their scheme to trump fairness with finality.

Unfortunately for this particular government, not one single peice of their standard response relates, in any possible way, to the carefully crafted lines of inquiry explored in the §2255 that should be brought to the light of an in-person, fair and public hearing.

Petitioner Dutschke was very cognizant of the commonly used, often cited obstacles that prosecutors are in the habit of throwing in front of petitioners seeking fairness, which is exactly why the 2255 at issue consists of only five (5) very valid grounds instead of a hundred (although since the plea agreement was, in fact, breached by this government in multiple ways, it doesn't really matter). In fact, the standard obstacles used by this particular government, in this case, are not even obstacles at all to those five very meritorious lines of legitimate inquiry.

Petitioner Dutschke is fully aware that the usual questions usually leads to the usual answers.

A - Their usual, canned responses are no impediment to any of the five grounds at issue.

1 - Ground one is a very misleading, highly prejudicial citation error which, because it misalleges a very material element of the supposed offense IS, without question, subject-matter jurisdiction. Jurisdictional issues can never be waived and therefore the waiver in the (broken) plea agreement is not enforcable to Ground 1.

It should be noted that this was clearly indicated in the 2255 filing and NOT addressed or disputed by this government. Additionally, it was clearly indicated, on numerous filings including the 2255, that the government did, in fact, breach the plea agreement and at no time, including this governments response, did they deny, object or even address that issue at all and should be considered by the Court as legal fact.

The only two possibilities as to why this government did not, at all, contest this are: either they actually realize there is no effective argument to contest this well-established principle (of jurisdiction) or because they simply didn't bother to read the actual filing.

Either way, this government has failed to prove why this one case should be the exception allowing subject-matter jurisdiction to be waived, breaking with long-established caselaw. The actual writing of the statute itself proves this ground as explained below (Ground 1).

2 - Ground 2 is in regards to the Actual Innocence of the charged statute. Actual Innocence can NEVER be waived, and when someone clears the actual innocence, they have also met the

"complete miscarriage of justice" standard. The waiver, and the plea agreement as a whole, has absolutely nothing whatsoever to do with, and no bearing on Ground 2, actual innocence. The clear and concise writing of the statute itself proves this (as below Ground 2).

3 — Ground 3 is the erroneous interpretation of the law itself and the reach of the statute itself. This, then, is obviously and clearly another issue of subject-matter jurisdiction and as such is never waivable. The (broken) plea agreement has no bearing whatsoever on Ground 3.

In addition, any conviction under an erroneous interpretation of the law is a "fundamental miscarriage of justice." This is the argument so well explained by the United States Supreme Court Justices in the 2014 UNANIMOUS Bond decision.

4 — Ground 4 (ineffective counsel) was not waived and this reply, the original filing and a fair, public hearing will easily and conclusively show both prongs of the predictably cited "Strickland test" are, in fact, met.

5 — Ground 5 is the Constitutional errors regarding the statute and its enforcement. This argument is twofold, one is implementation the other is enforcement. While it is true that the general constitutional arguments might be subject to the waiver, if the plea agreement had not been breached multiple times, the very thorough analysis carefully detailed by U.S. Supreme Court Justices Scalia and Thomas make it very clear that (regarding implementation) Congress lacked the jurisdiction to "implement" an Executive Branch

international treaty. Therefore, once again, Justices Thomas and Scalia show that the implementation is a jurisdictional issue and therefore not waivable.

In addition, in separate concurrence on the case, Supreme Court Justices Thomas and Alito make it abundantly clear that domestic enforcement is beyond the reach of an international treaty and any statute tied to it, thus making enforcement an issue of geographical-jurisdiction. And again, jurisdictional issues (it matters not what kind), are never waived.

a- Furthermore, the governments final admission that ricin (assuming ricin toxin) IS on the Annex of Chemicals of the chemical weapons Implementation Act of 1998 (22 USC § 6701 (10)(H)), and the government's reminder (citing the sentencing transcript in the response) that District Judge Aycock, herself, specifically noted ricin (toxin) on that very same Annex (page 20-21 of the transcript), introduces then 22 USC § 6712 of the same Act which specifically states:

"No person may be required, as a condition for entering into a contract with the United States." (such as a plea agreement)
"... to waive ANY right under the Constitution for ANY purpose related to this Act or the Convention."

≡ See Exhibit 11 - "No abridgement of Constitutional Rights" ≡

B - As if all of the above was not enough (although it is), it should not be lost on the Court that this government's response failed, in its entirety, to address, at all, that their breach of the plea agreement makes it null and void. This breach has been specifically detailed to this Court, and even then not in full. The 2255 filing makes very clear reference to this breach which is entirely uncontested by this government, and on multiple occasions. In fact, these prosecutors don't mention it at all, and likely for obvious reasons.

United States v Pizzolato, 655 F3d 403, 409 (5th Cir, 2011)

As in the present case:

"When the government breaches a plea agreement, the defendant is necessarily released from an appeal waiver provision contained therein." United States v. Gonzales, 309 F3d 882, 886 (5th Cir 2002)

United States v Munoz 408 F3d 222, 226 (5th Cir 2005)

Santobello v New York 404 US 257, 262 92 Sup. Ct, 495, 30 L Ed 2d 427 (1971)

United States v Elashyi 554 F.3d 480, 501 (5th Cir, 2008)

United States v Roberts 624 F3d 241, 246 (5th Cir 2010)

United States v. Grandinetti 564 F 2d 723, 726 (5th Cir 1977)

United States v Saling 205 F.3d 764, 767 (5th Cir 2000)

United States v Cates 952 F 2d 149, 151 (5th Cir)
112 US Sup.Ct 2319, 119 L Ed 2d 238 (1992)

In short, the plea agreement is, in fact, void.

C - All of the grounds raise substantial issues of law and substantial issues of fact. The government, in its response, somehow manages to pretend this is not so and predictably presses for summary treatment.

However the governments answer is in no way conclusive, (and in many ways actually supports the petitioner).

"The governments answer and affidavit are not conclusive against the movant, and if they raise disputed issues of fact, a hearing must be held." Pomransky V United States 2009 U.S. Dist Lexis 23812 at *4 (E D N C, mar 25, 2009) Magovirk V Phillips 144 F3d 348, 363 (5th Cir 1998)

Every issue brought to light was specifically chosen because, with these specific issues and grounds, "cause and prejudice need not be shown" and are available at all times for collateral attack. The prosecution has wasted valuble time, paper and ink in printing their standardized, fill-in-the blank response unless they are confident that the Court is likewise more interested in finality over actual fairness and justice. In their eyes, clearly, there should be no appeals process or courts at all, their behavior clearly and obviously demonstrates exactly that.

The rest of this traverse reply to the governments response will deal with the merits and specifically show, and in exact exhaustive detail, the governments arguments on the merits are vapidly obtuse, misleading and devoid of significantly adequate substance.

This government has no procedural bar for any of the stated grounds and the in-person, public, fair evidentiary hearing should be appropriately limited to only the wrongful conviction of 18 USC §175.

**III** The proven NON toxicity is an unignorable material element.

The key and very important and very informative proven facts this particular government is trying and hoping to minimize and suppress is the proven NON toxicity of the 2013 KC letters themselves. To grounds 1-4, the proven fact of it is obviously key and an unignorable material element.

This particular government knows that the assertion petitioner Dutschke has made from the beginning is heavily supported by the facts including their own laboratory's forensic analysis. This is why they attempt to disallow their own forensic evidence as their own evidence disproves their original claimed mythology.

Once confronted with the NON toxicity evidence, however, the history of the case has clearly shown they changed their argument to claim that toxicity, once deemed important to them and publicly so, was of no importance at all any longer.

On one hand, whenever possible, they continue to mislead that there was a deadly, disease causing infectious pathogen of germ warfare with "no known antidote" every where, yet at the same time hoping the Court will ignore their own forensic evidence which contradicts their myth and just play along, pretending it is so.

They cannot have it both ways.

**A -** In their attempt to keep a judge's eyes from reviewing and considering their own evidence, and the actual wording of the statute(s) itself, they make the preposterous claim on page 12 of their response that the "toxicity issue was addressed by this Court at Sentencing" and "is settled."

And then again from page 13 of the governments response:

"This issue was previously raised and rejected by the court."

That, however, is very far from the truth, and any common sense reader will conclude the same. The prosecutors then state on page 16 of their response "...it is helpful to look back at the Court's ruling on this issue," (a loaded statement since it was not an actual ruling on the issue, but a NON ruling and NON consideration).

It IS "helpful to look back", in that, this government is uncharacteristically correct, but for the exact opposite reason. It is clear, to any common sense reader, of that section of the included transcript, that the judge chose specifically NOT to rule on the toxicity at all. In fact, she clearly stated she was not even considering the toxicity issue and even explained why she avoided it and explained why. So whether or not the interpretation for the sentence enhancement was correct or not (petitioner maintains 'not'), does not matter. In judge Aycocks own words:

"The level of toxicity, the purity is immaterial in making a determination..." (re: sentencing) (May 13, 2014 transcript, page 20-21)

In other words, the Court did NOT "settle" the issue. The Court did not consider the issue at all. In fact, she specifically then stated:

"I believe it does not apply"..."as they relate to sentencing purposes"

then continued by acknowledging and recognizing that a trial would have been different and possibly "involve weeks of expert testimony."

Judge Aycock did not "settle" the issue of toxicity at all,

#14

in fact, she clearly stated why she did not feel it needed to be settled (on and for that day), and differentiated that need for trial vs her interpretation for sentencing.

B - Even if this Court had actually "settled" the toxicity issue as this government falsely claims, the petitioner brings into light the error in the 2255 filing, as that material information relates to the actual language of the law itself.

And as the United States Supreme Court has long established:

"Allegations of information are to be most strongly construed against the government"

United States v Jones (1952 DC Fla) 108 F. Supp 266 (1953)

375 US 377, 97 L Ed 1086, 73 Supreme Court 759

And addressing errors such as this, whether "settled" or not, is exactly why there exists an appeals process.

No Court in the land, after being presented with the actual language of the law (Exhibit 2-(4) could possibly conclude that toxicity is not an essential material element, which is precisely why these particular government lawyers wish to brush aside the harmlessness of the very thing they once publicly claimed was a deadly biological agent of germ warfare.

C - It is critical to note that at no point does the governments response provide even a shred of actual evidence that disputes (their own findings) that the granular castor fertilizer is, in fact, nothing more than common harmless fertilizer, purified to the same legal level as drinking water.

In fact, they doom any argument to the contrary by pointing to the transcripts:

"... the government maintains had a ricin (protein not toxin)
purity level of O.013 percent ... 91 millionths
of a gram ..."

It was only when they were confronted, finally, with their own
forensic evidence proving NON-toxicity that this government began
to attempt a new insistance of intent.

However, the actual evidence conclusively proves that the
intent was to ensure that something was NOT toxic. Despite
that clear evidence they then suddenly uttered, and for the first
time, that, suddenly, toxicity did not matter, hoping the Court
would forget that for a year, they claimed very publicly and
loudly that the content of the 2013 kc letters was a "deadly
poison with no known antidote."

If toxicity was never important, then why was it so
important to run all these tests, including the final analysis
from the NBFAC and the CDC concluding there never was any
sort of toxic substance?

And why was it so important to silence Dutschke and his
attorney, via "Special Administrative Measures," as soon as the actual
laboratory tests confirmed there was no ricin toxin?

Why not just never properly test anything (as was done in the
beginning), "seize" a bag of kitty litter from the petitioners
home and pronounce it to be whatever they want it to be in order
to fit their absurd, far-fetched mythological narrative?

D - The history of the case clearly shows, once this government was finally
confronted, instead of denying it (which they couldn't realistically
do in front of a judge), they then admitted their knowledge of it,

16

(but not until then) First AUSA, Lamar, then another of their many players on the governments prosecution team, Sigler, whose panicked response, while telling, was the single most superstitious claim ever uttered outside of a circus:

> "... the defendant could not have known the strength without performing tests that would involve the death of animals... or very sophisticated assays... done at the most sophisticated scientific laboratories in the United States."

Ignoring for a moment that Mr Sigler has just, with one simple statement completely demolished, fatally so, the governments entire case (both for sentencing enhancement AND trial evidence), since "KNOWINGLY" is the key element of the statute (along with "toxic"); He, aside from that, exposes a very fatal flaw in their argument with his laughable statement.

1- It would have been impossible to "involve the death of animals." There was nothing harmful about it. So no "test" in the world would have "involved the death of animals." This circular claim is intended to distract. Smoke in mirrors, again. In fact, hundreds of thousands of tons of exactly this common castor fertilizer is sold each year commercially and retail. It has forever been common for livestock to often confuse bags of it for feed but never with any ill effects.

2- How on earth could/would they know if any "testing" was performed or not? The only test that mattered was the experiment involving the rooting hormone of the mix, not what happens if someone

17

(else) decides to harrass someone through the mail or not.

3 - Who in their right mind goes around testing their fertilizer?

4 - The very "sophisticated laboratories" Sigler specifically referred to (CDC, NBFAC) are the exact same laboratories that confirmed there was nothing toxic at all!

5 - Their sudden and immediate shift of the argument and admission proves that they were fully aware, prior to the plea agreement, that there was NOT, in fact, anything at all that actually fit the statutory requirements specifically requiring actual toxicity. In short, toxicity (as publicized) was paramount to them and their very public case, until they discovered there was NO toxicity.

This government now wishes to CONvince us all that it holds the power to speak for the judge; to put words in her mouth and assume the Court will merely 'rubber stamp' whatever they claim, even when they have completely changed their position. They contend, based on their presumptuous response, apparently, is: Why bother having a judge or Court at all when it is the Great and Powerful prosecutor① who can simply decide, "it is settled"

As much as prosecutors may think they run and control the courts, a common-common complaint, that is simply not the way the system was designed to work.

E - The NON toxicity of the granular fertilizer that is likely the substance at question in the 2013 KC letters IS very material to Grounds 1-4 and to the case itself. Judge Aycock seemed to recognize that. It is, in light of the statutes as they are written, in law, (Grounds 1 and 2) exculpatory evidence. Exculpatory evidence cannot be suppressed.

① Reference to the "Great and Powerful Oz!"; "just don't look behind the curtain."

18

And whether the prosecutors knew the statutes as written into law (as outlined in Grounds 1 and 2) OR even if they didn't know, any attempt to suppress exculpatory evidence is a Brady violation.

How long was the government going to go before they admitted to the court their knowledge that the 2013 KC letters contained nothing, in fact, that was actually in violation of either §175 or §229?

That answer is clear. They had no intention of ever admitting that and wouldn't have until they were forced to at the sentencing hearing.

Is that justice? Fairness? Is that not asking, begging for a conviction that is a miscarriage of justice?

At the moment when, at least, finally confronted by the petitioner at the sentencing hearing with the exculpatory forensic analysis did they not have a Constitutional duty to then disclose to the court that, according to the law, as specifically written by the lawmakers themselves, that the KC letters were NOT a violation of 175; or is the conviction more important than the law itself? were they, officers of the Court, just going to leave the legal research to appointed counsel?

Is there any doubt that if this government's forensic analysis had instead shown a toxicity level above the prosecutorial threshold (such as the 5% in Olsen, the 401% in Leahy the 5% in wheeler and 5% in Baker or the 5% in Levendari's) they would have most certainly made a point to highlight it, and publicly so, instead of hiding it away then changing their position when finally confronted.

In other words, is there any doubt that if this governments forensic evidence was instead inculpatory, there would have been no silence about it and no attempt now to prevent it?

This prosecution, then, assumes (hopefully falsely) that their casual disregard for their constitutional obligations, even to protect the rights of the accused, will be "rubber stamped" by the courts. But it is only the Court that can finally put a stop to this epidemic. That is, in fact, the purpose of the courts in the first place, and the reason Article 3 exists.

This government's rationale for ignoring what is vital exculpatory evidence, an obvious material element, is wholly without any constitutional or legal substance and it causes them to lose all credibility. Vital exculpatory evidence can never be ignored or excluded. Grounds 1-4 of this reply will include, as key, this vital, material evidence and must be included in the evidentiary hearing.


IV.  The Governments insistance on the HHS Select Agent (and Toxins) list.

Also fatal to this government's self-contradictory response in the respondents argument is their admission that ricin (implying ricin toxin) IS specifically listed as a Schedule 1 chemical by the Chemical Weapons Convention Implementation Act of 1998 as well as their own insistance upon the HHS Select Agent and toxin list.

Why these two things fatally and completely doom their argument will be explained below (Grounds 2 and 1) and in such detailed terms that even this governments lawyers can understand.

20

**V**   Ground Two - Actual Innocence

Although out of order numerically, the easiest and most obvious Grounds to address first in reply to this governments response, is Ground 2. Ground 2 is Actual Innocence and requires nothing more than the already admitted and established evidence and the actual language of the law itself to prove as valid for overturning the conviction of (specifically) 18 USC §175.

**A** -   Before demonstrating and conclusively so, that the actual evidence simply cannot support a conviction of 175, as it is written into law, it is important to point out what 175 does NOT say:

    1 - Numerous documents by this government, Court and press releases and therefore news articles have falsely contained the incorrect language, "convicted of USING ricin."

Such reckless language is dangerous as it is impossible to be convicted of "USING" ricin under 175. Such language is merely to sensationalize a non-crime. This falsehood, repeated by the Court using the governments direct language, and the media, has originated entirely and predictably from this governments prosecutors.

       **a** - The glaring and obvious problem is that if someone really and actually "USED" actual ricin (assuming toxin), then someone would really and actually be dead! This is an inescapable truth that no thinking person could ignore, probably why the prosecutors ignore it.

       **b** - The second glaring problem becomes easily apparent with a single, simple cursory reading of the statute itself. Even without the Supreme Courts unanimous Bond decision (requiring that a weapon actually be harmful)

there is no need to interpret anything; the exact language of the statute itself is, legally, the proper guide. The elements of the statute are infact — "knowingly", "develops (or produces)" or "stockpiles (or retain or possess)" or "transfers (or acquires)" and "toxin (or toxic material)."

It is impossible, then, under the exact language of 175, to be convicted of "USING" ricin (toxin), since "use" itself is NOT an element. 175 simply does not cover actual use (as 229 does), but production transfer and stockpiling, are the elements of action.

2 - 175, or any of the statutes or regulations connected to it, does NOT say a single thing about "intent". (Neither does the sentencing guidelines).

The key elements of the statute regarding state of mind is "knowingly..." and "as a weapon"

Since the evidence conclusively shows that the granular substance was NOT toxic, then there was no intent to make it toxic or make it a weapon. In fact, it clearly shows "intent" to ensure its harmlessness, however that is all a moot point since the language clearly says "knowingly", knowing is an element. Intent is not.

3 - Those points aside about what is NOT written, the meat of the matter, then, is Actual Innocence by the actual statutory language, as it IS written, by law

The United States Supreme Court established in Sawyer v Whitley (505 US at 339) and countless other

Case law concurs, that the Actual Innocence exception applies to even a SINGLE element of the alleged offense.

Additionally, The U.S. Supreme Court established that:

When "The prejudice is so severe as to be fundamentally unjust - ie, convicted, see Murray v Carrier 477 U.S. at 496, or sentenced, see Sawyer v. Whitley 505 US 333, 336, 120 L&d 2d 269, 112 U.S. Supreme Court 2514 (1992), when he is actually not guilty of that conviction or sentence -- a prisoner need not show cause."

That IS, in fact, why the Supreme Court established the Actual Innocence exception in the first place. United States v Maybeck, 23 F 2d 888

As for the 5th Circuit, following the Supreme Court's established case law is proper. The 5th Circuit has ruled:

When the error is demonstrated that leads to a conviction that a "defendant would not have been LEGALLY eligible for," a proper showing of Actual Innocence has been demonstrated.

(Smith v Collins 977 F 2d 951, 959, 5th Cir. 1992)

Actual Innocence can never be waived and the government has NO procedural bar to prevent a fair and thorough review or reversal of the conviction, as demonstrated below.

( - The elements required of 18 USC §175 are NOT met, this government has not and cannot show otherwise. The actual evidence can NOT support a conviction. The discussion should be as simple as this:

1 - Is there any evidence at all (even considering the 10 hopeful searches by determined, pressured law enforcement agents) of any actual "stockpile" of a biological agent of germ warfare (or of

23

ricin toxin which is Chemical, see Ground 1) ?

a- No. No possession of any toxic substance or any quantity of anything that could even be mistaken for either ricin toxin or a biological weapon was found. Evidence conclusively shows there was no such stockpile (element).

The amount of either ricin toxin or an actual biological weapon discovered in the possession of petitioner Dutschke amounted to the quantity of ... Zero!

This government, in fact, cannot provide any valid laboratory analysis confirming ANY quantity at all of an actual infectious agent of biological warfare (or ricin toxin as they claim). They never alleged possession.

2 - Another element is "transfer".

This government obviously wishes to avoid any such discussion of 'transfer' as it merely opens the door to the scenario which is counter to their far-fetched 'framing' mythology, that is that the mailer and the maker are not the same person is a fact they cannot publicly acknowledge because of the 871/876 conviction they wish to protect. If they acknowledge the element of 'transfer' from maker to mailer, they jeopardize their 871/876 conviction of the petitioner.

So they do not allege transfer.

3 - What they do seem to allege is the third required element of 175, "develop" or "produce" a toxic infectious pathogen in violation of the Biological Weapons Convention.

So did petitioner Dutschke develop an infectious toxic biological weapon?

24

C - The record and (the government's own) evidence conclusively demonstrates, "No!"

All questions aside regarding the highly prejudicial citation error (even if ricin toxin actually existed, although it does not, then it would be Chemical / §229, not biological /§175, by law), this discussion is easy to understand by anyone of reasonable intellect and is addressed below (in D).

D - The Actual Statutory language.

As explained in the original §2255 filing, this legal argument is as simple as reading the actual statutory language. However, this government has resorted, in its response, to confusing twists of bizarre interpretation and obfuscation, so the proper stance must be addressed, and any "creative interpretations" by this government debunked by the ACTUAL statutory language.

As United States Supreme Court Justice Scalia points out in Bond and quoting Stenberg v Carhart, (530 US 914, 942, 2000):

"When a statute includes an explicit definition, we MUST follow that definition."

Nowhere does Justice Scalia add, "ignore the actual language and read into a statute whatever could help score another conviction."

Yet, that is what has happened. This government stretches to convince the Court, hoping it will play along, that the statute means things it does not say, and that which it does say should be ignored.

In this case, the statutes and regulations concerning §175 and the statutes and regulations concerning ricin (toxin) (they are different), unquestionably remove any ambiguity in the definition.

25

In other words, for a proper interpretation of the law here, one need look no further than the actual language of the statutes and regulations (that concern ricin toxin) that are clearly conveyed in writing.

In this case, a reading of the law clearly demonstrates that the actual evidence confirms that not only was there never any production of an actual toxic biological weapon, but a willful and successful attempt to ensure otherwise, and in doing so actually complying with the legal (and safety) requirements to ensure absolute safety, as it is written into law.

1- Everyone knows, and the government does not even bother to contest, that the contents of the 2013 KC letters were not, in reality, actually toxic.

(This is why this government suddenly changed its position when finally confronted with their own laboratory analysis, confirming it was not toxic, to suddenly saying that actual toxicity is not important.)

However, actual reality and legal reality are not always the same thing.

So the question is no longer - "Are the KC letters actually toxic?" Everyone now knows conclusively they were not. The only question at hand then is, despite the letters harmlessness "Are the KC letters legally toxic?"

2- The lawmakers and the law, as written, makes perfectly clear, the answer is, "NO."

The 2255 petition, as filed, reveals the newly-discovered "Round to Zero Rule" of 15 CFR § 712.1

≡ See Exhibit 6 ≡

26

15 CFR § 712 [1], enacted by the Chemical Weapons Implementation Act (22 USC § 6701) specifically applies to:

"applies to activities involving Schedule 1 chemicals."

This is what the regulation specifically says and there is absolutely nothing that a prosecutor from Mississippi can do to change that. Ricin (toxin) is specifically listed, by law, as a schedule 1 chemical, easily verified, in black and white:

(22 USC § 6701 (10)(H))

"The term 'Schedule 1 chemical agent' MEANS any of the following...
     (H) Ricin."

≡ See Exhibit 3 ≡

And further written into law in 15 CFR § 712, Supplement No. 1 as a chemical (CAS registry number 9009-86-3)

≡ See Exhibit 4 ≡

There is nothing a prosecutor can do to change that reality either. The government even reminds us in their response that even Judge Aycock, herself, affirms this as they include a small segment of the May 13, 2014 transcript:

The Court: "... and ricin (toxin) is one of ~~those toxic~~ toxic chemicals that's listed in the Annex..."

Judge Aycock's recognition is important here for Ground 1 as well, to be discussed later, since the only "Annex" that lists chemicals IS the Annex on Chemicals to the Chemical Weapons Convention.

Therefore, ricin (toxin) IS a schedule 1 chemical, by law, and as such the Round to Zero rule MUST apply, thereby completely exempting the 2013 KC letters from prosecution

27

since "0.013 percent" (Coghlan, May 13, 2014) is far below the prosecutorial threshold. That is the law, and there is nothing the mississippi prosecutors can do to change that.

It is also important to note that this governments own final forensic analysis includes ALL the protein levels without differentiating ~~between~~ between the multiple proteins, and therefore NO actual Ricin Toxin (A-B chain, disulfide bond linked) proteins at all are specifically identified. The actual protein (A-B toxin) level that is specifically considered ricin toxin is actually verified by the CDC as ZERO. Nevertheless, the Round to Zero Rule, as written by law, legally requires that the entire level be rounded to zero; so either way, there is legally (and actually) ZERO ricin toxin levels, by law, associated with this case.

That is the actual law, as written, even though those particular government prosecutors wish it wasnt.

3 - However, this particular government, on page 17 of its response, completely dooms its own argument in the most confusing tangle of failed logic ever attempted in a legal document.

In doing so, they introduce what is a FATAL flaw of their argument, and actually make the petitioners case for him — The "Select Agent List"

Their bizarre response, if anyone can follow it, is that the Round to Zero rule which lawmakers specifically wrote to include Schedule 1 chemicals now magically

does not apply in this one case. In other words,
"Forget what the lawmakers wrote, just interpret how
we want."

Again - the law, as written, specifically states:
"Round to zero rule that ~~applies~~ to activities involving
~~Shedule~~ Schedule 1 chemicals." = Exhibit 6 =

It does NOT say: "... applies only when a mississippi
                prosecutor wants it to apply."

Nor does it say: "... applies to activities involving Schedule 1
                Chemicals... unless it's Dutschke, then
                it doesn't apply."

The law says what it says, and explicitly so. Are prosecutors
from mississippi suddenly now allowed to, at their whim, rewrite
the plain language of an international treaty and the statute
connected to it, as it is written?

This attempt at an argument fails at its very face.
The actual language is simple. But they continue to confuse.

4 - This government, in its desperate response, then proceeds
to make the admission that ricin (toxin) IS indeed a
Schedule 1 chemical (229), on one hand, but then manages
to segue into an alternate reality, that would make
an episode of Jerry Springer seem normal, when they
try to dis-qualify their own admission with a groundless
argument that is utterly incomprehensible.

Their "logic" is very hard to follow. No, it's impossible
to follow, but here is their bizarre argument:
"... but in the Select Agents and Toxins list

applicable to 175, the select agents and toxins marked with an asterisk (*) are... Tier 1 select agents and toxins "

What? What does that have to do with anything? Furthermore this distraction falsely states that the HHS Select Agents and Toxins list applies to 175. It does NOT. the list of HHS Agents emerged from and is connected to legislation far removed from and years later than §175. (For the true application of the HHS Select list, see Ground 1, later)

But then, this government somehow manages to descend even deeper into the void of utter incomprehension:

"Under 42 CFR 73(3)(b), ricin is not marked with an asterisk ... because ricin is a Tier 2 toxin and... not a Tier 1 toxin which could be considered parallel to ... Schedule 1 chemicals then the Round to Zero ... does not apply to ricin. "

Even if someone reads that a hundred times it will never make any sense or have ANY legal validity to it whatsoever. While this bizarre "Who's on First?" routine of theirs may be good for comedy value, but this ridiculous convoluted twisting of theirs is entirely made up.

**O¬ - First,** this absurd interpretation, then, would entirely dispose of the Annex on chemical weapons, just because some Mississippi prosecutor said so. Why bother specifically writing something as a law if it doesn't "apply"?

30

b - Secondly, nowhere, in any law, statute or regulation does it say that the presence of an asterisk has a single thing at all to do with Round to Zero, or 229, or 175. Anyone who actually can read can clearly see an asterisk, and tiers, do NOT say, at all, what the prosecutors are trying to sell. There is no possible way any thinking-sentient being could mistake this nonsense for actual logic — it certainly is not the actual law.

C - Third, and This is their Fatal Flaw that requires reversing the conviction of §175, is their very own urging and (now) insistance upon using the HHS Select Agent on toxin list and apply it to this case.

✳ Remember, it is this government, itself, in its very own response (page 17) that insists on it.

— If this governments prosecutors had bothered to read the Select Agents and Toxins list, they would easily see that list is a combination of infectious biologicals AND chemicals ( Abrin and ricin are chemicals, for example, and Ebola virus and Yersinia Pestis, or the plague, is biological) and that inclusion on the HHS list does NOT dictate 175.

— If the government would have bothered reading to the END of that list (42 CFR §73.3) (≡ exhibit 9 ≡), they might have easily discovered why their argument fails in its entirety.

31

because the very same list they point to in order to avoid the Round to Zero rule (or 229) is the same exact list that, later, reveals the trace element exclusions that SPECIFICALLY prevents prosecution in this case!

In other words, this governments prosecutors have, in ill-witted fashion, directly aided the petitioner greatly by their insistance on the Select Agent list!

42 CFR § 73-3 (d) specifically notes the exclusions the lawmakers wrote into law

 ≡ See Exhibit 10! ≡

→ Specifically Excluded from prosecution:

✗    "(2) Nonviable select agents or NON functional toxins"

There it is, in writing and specifically so there is no confusion or exactly this kind of mis-interpretation.

But then, for anyone who has not yet understood, and to make it so clear that even a government prosecutor could not possibly mess it up, it continues:

✗    "(3) ... does not exceed 100 mg of Ricin."

Done. Argument over. By their own hand, by their own insistance, there is nothing left they possibly could say. The threshold, by weight, is now set, and by the same list the prosecutors insisted in their response upon using.

So even if one does completely ignore the Chemical Annex, as this governments response wanted, and not

apply the Round to Zero rule and instead use the HHS Select Agent list they insist upon in their response, it STILL does not meet the threshold required for prosecution.

In fact, it is WORSE for them, since the actual protein amount, by weight, was so microscopic as to be "invisible to the naked eye" (Coghlan, 2014)

5 - So returning to the question, legally, it is so very simple. Their attempts to confuse and complicate this matter are fruitless and pointless. All one need to ask is - "Is the legal threshold for prosecution (that the prosecutors themselves now insist on) for that statute met?

a - The actual evidence, as provided by this governments own laboratories, answers conclusively. "No!"

As mentioned in the original petition, this is as simple as a DUI case. Is the legal threshold or legal limit met? No.

Then the actual evidence cannot support a conviction, as it is written, by law. It is that simple. Argument over. Those prosecutorial thresholds were written into the law for a reason. The actual language of those laws is not to be ignored.

Someone who is under the speed limit convicted of speeding is a miscarriage of justice.

Someone who registers ZERO on a breathalyser convicted of DUI is Actually Innocent

33

The lawmakers put those exact words to paper to be respected, not ignored on a whim.

42 CFR 73.3 (d) (2) and (3)

The statute says what it says. Whether one uses the Round to Zero rule, as the petitioner maintains is proper, OR the Select Agent List, as this government suddenly says is proper does not matter. Either way, the required legal threshold is NOT met and petitioner Dutschke is innocent.

Complying with the law, in its entirety, cannot in any fair court, stand as a valid conviction. The law, as it is written, is written specifically with those exceptions exactly for that reason, otherwise there would be no point at all in their existance, would it?

In other words, if the application or interpretation of a law, as it is written, becomes arbitrary, then it cannot be a law.

Or simply put, if the law can be bent, it isnt the law, is it?

**6 -** The HHS list reveals the prejudice.

For another reason, this governments insistance to apply the Select Agent list to a §175 conviction is fatal to their own argument. It is baffling they would, with their insistance, support the petitioners case and the gravity requiring review, showing and demonstrating, further the prejudice inherent in this,.. another miscitation.

According to the law, as it is written,

34

Select Agents and Toxins are NOT prosecuted using 18 USC § 175. 175 is for infectious pathogens such as Anthrax and other disease causing biological germs that have been weaponized, and NOT part of the Select Agent List.

( allowing prosecution for a Select Agent that is not intended for use as a weapon is outside the reach of 175, as explained below, and in the statutes itself).

— Prosecution for a Select Agent is brought under 175 b !

18 USC § 175 b

≡ See exhibit 12 ! ≡

By their insistance upon including Dutschke's prosecution under the HHS Select Agent List, government's response page 17, this government has "waived and conceded that an integral material element is not met."

Both 175 and 229 require the element "for use As a weapon."

175 b ( to which the HHS list is attached) is for NON weaponized Agents and toxins.

Simply, whether it is a Chemical Toxin ( 229) or an Infectious Pathogen ( 175), if it is not actually weaponized, then prosecution is brought under 175 b.

≡ Exhibit 12 ≡

175 b was NOT enacted by the Biological Weapons Convention Implementation Act from 15 years prior, nor was it enacted by the

35

Chemical weapons convention Implementation Act of 1998.
The BWCIA of 1989 led to 175, The CWCIA of 1998 led
to 229. However, 175b was the result of the Public
Health Service Act and gave rise to the Select Agent
and Toxins list that this government now insists in its response
should be used.

                        42 USCS § 262a

        This is simple -

1989 - Biological Weapons Convention Implementation Act = ($\boxed{175}$)
                                covers weaponized pathogens

1999 - Chemical Weapons Convention Implementation Act = ($\boxed{229}$)
                                covers ricin toxin & sched 1 chemicals

2004 - Public Health Service Act = ($\boxed{175b}$)
                                covers chemicals and biologicals that are NOT weaponize

Odd how this government does not know its own laws.

        Since this particular government, in its response,
suddenly insists on using the HHS select agent list established
by the Public Health Service Act (42 CFR 73.3) then
prejudice and incalculable unjust injury is revealed that,
"would, if condoned, result in a complete miscarriage of
justice" United States v Capua 656 F.2d 1033, 1037
        (5th Cir 1981)

        This Court, in its past frequent denials of 2255
petition has quite often looked for that injury and
prejudice (often citing Capua) but in this case
is easy to find, and is shown in 7 and 8 below.

7 - 175b - (Select Agents and Toxins) contains elements

that are similar to 175, that is ① Transfer and ② Possession.
Note that production, then, is NOT an element of 175 b
(select Agent), and it is production that this government has
alleged from the very day the original suspect changed his
defense from mental instability to he "was framed."

Note also, that this particular government, in its response,
is insisting on referring to the Select Agent statute, where
ricin is listed (as a toxin).

Since the Select Agent and Toxin Statute does NOT, at all,
include production, then using this governments own
dependence upon their 'Select Agent' argument,
petitioner Dutschke cannot be guilty of production,
an element that does not even exist!

The actual elements of the Select Agent statute
this government now refers to are:

a - Possession - There was NO possession of any quantity of
   a Select Agent or Toxin

b - Transfer - which they will never admit to since they want
   to protect their 871/876 conviction

8 - The MAXIMUM penalty for either possession or transfer
of a Select Agent or Toxin (as on the list and statute that
THEY now insist should be used) is 5 years!
That is 20 years shorter than the 25 year sentence of
the plea deal - (the longest, by far, sentence ever for a ricin case)
And, although it is likely this government may actually
try to argue the simple math, 5 years is NOT life
imprisonment! There is quite a bit of difference between

37

the threat of 5 years and the threat of "as long as you

breathe"

Again, this is the law, as it is written, that the

maximum penalty for either possession or transfer (petitioner

Dutschke was not accused of either of those elements) is

5 years.

Prejudice is shown.

(Incidentally, the normal sentence for the numerous ricin cases

as well as the cases of 175 has been 30-60 months. No court

but this Court has ever sentenced a ricin case to anything anywhere

near 25 years, and for cases that might have actually involved,

in those others, actual toxic substances, whereas in this case, at

hand the longest 175 sentence or ricin sentence ever, there was

never anything at all toxic.)

It is now easy for all to see, then, that this, "if condoned,

WOULD result in a complete miscarriage of justice." (Capua)


Wouldn't it be a better, more credible system if

prosecutors would fight as hard for what is truth and real instead

of fight this hard to protect their mythology.

The only mechanism to protect the important concept

of prosecutorial integrity is the Courts.


It is now clearly shown that the evidence and the law,

as written, simply cannot support a conviction of 18 USC§175

and it must be reversed.

38

VI   The Citation Error - Ground 1

The highly prejudicial Citation error is so glaringly obvious that there cannot exist a court in the land that cannot easily see it.

Although this particular governments own analysis and "very sophisticated assays that are done at the most sophisticated scientific laboratories in the United States" (Sigler, May 13, 2014) have conclusively confirmed what everyone already knew, that the 2013 KC letters contained nothing at all toxic and was, in fact, as pure as drinking water; it seems that only this prosecution remains delusional enough to insist that even if it was actual ricin toxin, it would still, in this one particular case, be considered an infectious biological pathogen instead of chemical, no matter what the law says.

This is one of the many instances where they naturally assume that every one else must just fall into line and be obedient just because they say so in dictatorial fashion. That may well work with the press or with the youth of 1930's Germany; but it should not be allowed to steam roll the Court.

This is not merely to be dismissed as some wild speculation by the petitioner either. The credible list of those who disagree with the prosecutors from Mississippi and agree with the petitioner that actual ricin, although it does not exist in this case, is chemical not biological, for example, is a very long list:

- President William Jefferson Clinton who signed the Chemical Weapons Convention treaty and a year later the Implementation Act (including the Annex)

- 100 different Nations who signed the international treaty (including Annex)

- The CDC and the "experts" cited by this government, itself, in its own response including Gupta.

39

- The U.S. Congress who enacted the Chemical Weapons Convention Implementation Act including the Annex of chemicals in 22 USC 6701.
- The United States Department of Defense and the U.S. State Department who issued the Annex into regulation (15 CFR 712)
- Judge Aycock herself, who referred directly to the Annex on Chemicals
- The actual, clear language of every statute and regulation that mentions "ricin" makes it clear that the law itself considers actual "ricin" to be a (Schedule 1) chemical instead of a disease causing pathogen of "Germ Warfare", and it is the law itself, as written, that is to guide Courts.
- Every Scientist, teacher and student on the planet, who all know "ricin" is not a micro organism capable of infecting a host and then spreading, like a contagion, through an entire population.

The ONLY party that seems insistant that ricin toxin is a germ is the same party so desparate in a scheme to protect a conviction. A conviction of a man who is not guilty of a war crime, but of making the very same harmless Castor Fertilizer that people around the world buy commercially by the ton.

Not even the "experts" referred to in the governments response join them in calling "ricin" a germ. In this silly claim, this governments prosecutors do not even agree with the actual words of their own government. They stand alone in their conniption.

On page 17 of these prosecutors response, they show, however, that they can actually read (the law) when they do admit that "ricin" "IS a schedule 1 chemical," thereby showing full knowledge of the

40

exact Annex on Chemicals that Judge Aycock, herself, mentioned over a year
prior, which applies solely to §229, NOT §175.

    (it is a shame that it took a year for both prosecutors and
    appointed counsel to learn what apparently Judge Aycock
    already knew).

So even these prosecutors now admit the inescapable actual, scientific,
commonsense and legal truth that ricin toxin is NOT a germ.

    It is completely baffling why this government's attorneys are not at
all, (in this one specific case, it seems) in agreement with their own
client, the actual government itself! But the "why" the government
lawyers disagree with their own client (the clients clear written statements of law)
don't matter. What is clear, though, is that the actual government (see the
long list above or the statutes and language of congress itself) is being misrepresented
by its own lawyers.

A - Is the Citation error misleading?

    The answer is an obvious "Yes." And that is clear by
simply reviewing these prosecutors own constantly changing arguments.

    Is the Citation error highly prejudicial?

        Overwhelmingly, "Yes". Only 175 carries with it a possible
        life sentence, even if there is no injury, in order to deter future
        War Crimes and attacks that could wipe out entire populations.

Rule 7(c) is NOT a harmless error when the defendant is mislead by
erroneous reference and thereby prejudiced.

    United States v. Lowe 104 L Ed 2d 155, 109 US Supreme Ct 1639
    United States v. Key (2010 CA5 Tex) 599 F.3d 469
       131 S. Ct. 997, 178 L. Ed 2d 832

The indictment of the 2013 KC letters implies throughout that an ACTUAL pathogenic, infectious biological agent of germ warfare of a very toxic nature was deployed, endangering many lives and there "is no known antidote."

Nowhere in the indictment does this particular government indicate the truth that the KC letters were, in fact, completely harmless and incapable of any actual endangerment at all. In fact, they took the opposite tactic of painting a terrifying picture.

Everybody Panic.

Nowhere at all does it address the required toxicity and purity levels, which are obviously very important statutorally required material elements. In fact, their tactic actually makes the wild claim that the KC letters actually involved an actual toxic substance.

Therefore, the indictment IS, in error, and is misleading.

Additionally, nowhere in the indictment does this particular government state or imply, at all, that, as they do now, toxicity somehow does not matter. Their implication was that actual people were actually under attack by an actual infectious biological pathogen.

Of course now everyone knows that to be patently false, not merely incorrect on a "harmless error" but a total fallacy and wholly without a bit of credibility or substance.

As much as these prosecutors still desperately want the Court to 'play along', they, themselves know it is simply not at all in touch with reality. The actual facts and evidence, as well as the statute itself, conclusively proves otherwise.

This case is a perfect example of - 'if an act doesn't fit a criminal statute, then try to twist a criminal statute to fit the act!'

Indictments must be correct in their material elements and material facts as well as their implication as a whole. No matter what 'behavior' is alleged, not the material facts, material elements or the implication as a whole is correct with the 175 indictment, at hand.

- An indictment must be read to include facts which are necessarily implied by specific allegations made. Hewitt v United States (1940 C48 Mo) 60 S. Ct 1089

United States v Varlack (1955 C42 NY) 255 F2d 665

Gonzales v United States (1960 C410 Nm) 81 S. Ct. 1028

Grant v United States (1961 CA9 Cal) 82 S. Ct 627

91 S. Ct 2227

That an alleged infectious biological agent of germ warfare is not in any way biological is obviously very material an element.

That an allegedly "toxic" substance "with no known antidote" is not actually toxic (confirmed) is obviously a very material element.

"Rule 7(a) must be construed strictly, to protect those accused of our most serious crimes against summary treatment" Kees v. United States (1962 CA7 Ill) 304 F2d 661

"To be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense"

United States v. Gayton, 74 F.3d 545, 552 (5th Cir 1996)

Russell v. United States 369 US 749, 763-64, 82 S. Ct. 1038, 8 L.ed 2d 240 (1962)

United States v. Deitsch 20 F 3d 139, 145 (5th Cir 1994)

United States v. Chaney 964 F.2d 437, 446 (5th Cir 1992)

- Errors in the indictment ARE errors of subject-matter jurisdiction and jurisdictional defects "cannot be waived

or procedurally defaulted and a defendant need not show

cause and prejudice to justify his failure to raise one"

McCoy v United States 266 F 3d 1245 (11th Cir 2001)

Gideon v Wainwright 372 US 335, 83 S. Ct 792

9 L Ed 2d 799 (1963)

"A defendants subject-matter jurisdiction claim (is) not waived

since such claims may be raised at any time, regardless of a waiver"

Short v United States 471 F. 3d 686, 691 (6th Cir 2006)

"The subject-matter jurisdiction argument is reviewable because

subject-matter jurisdiction is not subject to waiver"

United States v. Titterington 374 F 3d 493, 459 (6th Cir 2004)

United States v. Richards No 4-10 2007, US Disc Lexis 74769

2007 WL 2915180 at * 8 (ED Ky, Oct 5, 2007)

"Jurisdictional issues are never waived and can be raised on collateral

attack at any time" United States v Cook 997 F 2d 1312, 1320

(10th Cir 1993)

**B** - The obvious Citation Error

Assuming that the KC letters actually contained a real infectious

biological agent of germ warfare that really was toxic (although it

was not), then §175 may have been correct.

However, these particular prosecutors did not allege an actual

pathogen but instead "ricin" (implying ricin toxin). Ricin toxin is

specifically listed by the United States governments actual criminal

codes and regulations and the international treaty that created those

laws as a potential Chemical weapon under the Chemical Weapons

Convention (as long as it is weaponized and above the prosecutorial

threshold). In this, the plain language of the law is very clear

44

and demonstrated throughoyht the statutes and regulations; no amount of prosecutorial twisting can change that. The law, as it is written specifically categorizes ricin (toxin) as a schedule 1 chemical under the Chemical Weapons Convention international treaty, then following under the Chemical Weapons Convention Implementation Act by all of U.S. Congress and the President (22 USC § 6701 et seq), and encoded as such in 22 USC § 6701 (10) (H)

= See exhibit 3 = Ensuring that § 229 controls "ricin" toxin.

Then in 1999 specifically designated "ricin" as a schedule 1 chemical into the Code of Federal Regulations by the Department of Defense and the U.S. State Department specifically tying "ricin" to the Chemical Weapons Convention criminal statute of 18 USC § 229 as "Supplement No 1 to the Part 712 — Schedule 1 chemicals" in 15 CFR § 712.

= See exhibit 4 =

Thus making it absolutely clear that everyone in the U.S. Government, including the president, Congress AND the state Dept and Dept. of Defense specifically considers "ricin" to be a chemical.

Therefore, if weaponized, is to be prosecuted under § 229. Not just a few people, but everyone, including the lawmakers themselves. This has been made crystal clear and everyone knows it. Everyone, that is, except for the overzealous prosecutors from Mississippi.

There is absolutely no doubt whatsoever, to the rest of the world, that according to the actual law, as written, and for the purpose of criminal prosecution of any real incidents of real and actual weaponized ricin toxin, violations are to be prosecuted under 229, not 175. In fact, that is exactly what 229 was written for and specifically designed and defined to include ricin. Otherwise, what would be the point of the lawmakers to specifically identify it

as included in the statute in the first place?

Is weaponized ricin toxin specifically written into the statutes for the purpose of prosecution under 229?

Yes.

Is ricin mentioned at all, in any way at all for 175?

No.

It is plain. It is specifically written. It is obvious. It is irrefutable. It is unignorable and it is the law.

Under §229, the penalty of Life Imprisonment is reserved ONLY for chemical warfare attacks that result in death, (such as the chemical weapons deployment in Damascus which recently killed the entire population of neighborhoods in Syria or the nerve gas attacks mentioned in the U.S. Supreme Courts unanimous Bond decision referencing the western front during WWI).

1 - In a feeble attempt to defend their undefendable position this particular government tries a bizarre grope on page 11 of its response:

"Ricin is a highly lethal biological toxin."

Their silly assumptive-speak is transparently desperate.

Ricin is NOT biological. Nice try, but it is time to stop the silly.

But no, their grope continues: "It is made from plant material."

As the petitioner pointed out, that absurd statement is what they hang their entire conviction on. It is a naive position that could not survive debate in a third grade science class and should not survive an actual legal discussion of mature 'grown-ups' in a Court of law.

4-6

However, since that seems to be their position, as laughable as it is, it must be explored.

Does it hold up to actual scrutiny?

By their own stretch and twist of logic, anything made from plant material is biological (alive and capable of reproduction.)

School children everywhere around the world learn that "bio", literally, means "life."

But perhaps webster and every other dictionary, textbook, encyclopedia, teacher, student, website, scientist, lawmaker, judge and small child on earth is wrong, and always has been, and this prosecutor from Mississippi is right.

"It is made from plant material" they say.

Therefore, these mississippi prosecutors have now overturned several millenia of common knowledge of civilizations and single handedly decreed, in dictatorial fashion, that [1] aspirin is not a chemical, but an infectious agent. ?

LSD is not a chemical but a "life form"?

Heroin is not a chemical but a germ?

Opioids are not a chemical but a pathogen?

Rubber and Ink are not chemicals but biological agents?

By this governments revolutionary new standard, if you put two Tylenol together, they may breed like viruses or rabbits and soon there exists a hundred Tylenol. [2]

That is just plain... stupid silly.

This supercilious position is as far-fetched as the rest of their mythical narrative about this case.

[1] Although, to be technical, a virus simply needs a host or vector.

2 - To try to support this utterly ridiculous claim, this particular government's response actually <u>supports the petitioner's correct stance</u> and actually DAMAGES their own position, and greatly so as they quote the CDC:

"It would take a deliberate act to make ricin and use it to poison people" (page 11 of their response)

<u>a</u> - This acknowledges then, that since the substance of the kC letters was (confirmed) NOT poisonous, that there necessarily was NO "deliberate act" to make it so. or...

Since it takes a "deliberate act ... to (make) poison" and there was no poson then there was no "deliberate act."

<u>b</u> - These prosecutors fail to mention in their response that it was, in fact, the CDC (the very organization they quoted from) confirmed via "sophisticated assays" that NO such toxin existed, and therefore NO actual attempt to make such a toxin.

In other words, the organization they used to make their point, the CDC, is the exact same organization that debunked it! (June, 2013)

3 - Later (page 16), in their attempt to support this position further, they do even more damage to their own position.

This particular government, in its response, quotes author Ramesh C. Gupta (ed. 2009):

"Ricin is about 1,000 times more toxic than potassium cyanide"

The quote is from chapter 25 of his book which is

entitled - "Handbook of Toxicology of CHEMICAL warfare Agents."

Amazing! In Order to support their position, which is that ricin toxin is NOT chemical, they quote a book, by a chemist, about Chemicals, that confirms that weaponized ricin is a "Chemical warfare agent."

This does more to HARM their position, and clearly the Chemist they quote supports the stance of the petitioner, and every other person on the planet, weaponized ricin is a chemical (prosecuted by 229) not a biological pathogen (prosecuted by 175).

Furthermore, assuming the author that THEY chose to quote, Gupta, to be credible, and the quote:

"Ricin ... more toxic than cyanide"

And considering that this governments own laboratories confirmed (as did Sadie Holland) that nothing remotely toxic was in the KC letters, then obviously the KC letters were NOT weaponized ricin toxin!

So now, it is demonstrated, with simple logic, that even the 'experts' used by the prosecutors to support their odd position, that ricin (toxin) is a germ warfare agent instead of a chemical, disagree with the prosecutors themselves.

In the end legally, none of this matters and is all 'icing on the cake' since the law itself, as written debunks their position. If an indictment is defective, a verdict of guilty does NOT cure the defective indictment.

Morales v. Wilkenson (1960, CA5 Ga) 283 F.2d 252

C - Case Law

To support their tenuous position, this particular government falsely claims:

"Case law makes it clear that this is the accepted view
of the courts".

implying then that prosecution for a (confirmed) NON toxic fertilizer
is somehow proper under 175, a statute implementing a treaty
to ban biological warfare.

A typical statement for government prosecutors, however it is
patently false and nothing could be further from the truth
Case law, as far as it exists, has specifically established the
opposite and finding proper conviction to NOT be 175.

However, what this prosecutor is trying to convince
the Court is:

"Well, since we've gotten away with it before, we should
be able to keep getting away with it."

The prosecutors, in their response, point to four cases to support
their false claim — United States v. Hughes, Olsen, Baker and Hale.
Their reliance on these cases is very misplaced.

But since this government cites these cases, this reply must then explore
those four cases.

1 — United States v. Hughes (9th Cir) and United States v. Olsen (9th Cir)

Neither of these cases is a good example for this government to
point to insupport of their position. For starters, neither of these
two appealed an error in citation and did not present, at all
the overwhelming statutory evidence, that the law itself explicity
categorizes weaponized "ricin" as a chemical. So because the
issue was NEVER raised, case law did NOT "make it clear"

and, in fact, the citation error has never been addressed by any court in the land. If it had, any court that could read would plainly see the obvious citation error.

Secondly, this governments examples are very misleading intentionally so, because Olsen did not ever need to raise the issue of citation error as it applies to 175 vs 229. What these prosecutors failed to mention in its response was that Olsen was originally indicted for 175, but then there was a superceding indictment. He was convicted of 18 USC § 229! after the superceding indictment.

And in the _Olsen_ conviction, the purity level of the substance, dosed in capsule form, was above the prosecutorial threshold and was allegedly calculated to kill a 150 lb person. The US Army Medical Research Institute tested three of the "ricin capsules", two of the three were below the prosecutorial threshold, but one was of "high concentration." What the judges DID say in Olsen (Judges Kozinski, Pregerson, Reinhardt, Thomas and Watford) is "prosecutors are more interested in a conviction than a just result."

It is no surprise this governments response failed to mention that Olsen was, in fact, convicted of §229 (chemical weapon) then sentenced to less than half of the Dutschke sentence, until 2014, the longest ricin conviction ever of 10 years and one day.

2 - United States v. Baker

It is a mistake by this particular government to

51.

try to use United States v. Baker to support its position that 175 is proper to prosecute a "ricin" case instead of 229, and for numerous reasons.

The Baker case from 1993 was a joint prosecution that resulted in a 33 month sentence (approx 1/10 the Dutschke sentence) for actual possession (which is not even alleged in the Dutschke case) of "enough to kill 126 people" and was of a toxicity level a thousand times greater than the prosecutorial threshold (5%) and 500,000 (five hundred thousand) times greater than the NON toxic, active protein levels of the 2013 KC letters.

(An actual toxic substance that DID surpass the prosecutorial threshold, see Ground 2, resulted in 1/10 the sentence of Dutschke)

The prosecutors conveniently fail to mention that this Baker conviction was in 1993, six years BEFORE §229 even existed!

Prosecutors in the Baker case did not have the option or ability to read and know the law, as it stands written today, and the specific definitions surrounding §229 which specifically designate "ricin" toxin as a Schedule I chemical under the Chemical Weapons Convention for an important reason: THAT LAW DIDN'T EXIST YET!

So the reason they did not properly apply 229, is simple: they couldn't prosecute a law that did not yet exist.

However, when the Chemical Weapons Convention Implementation Act of 1998 was finally signed by President Clinton in 1999, the substantive statutory law changed. And to specifically prevent exactly another Baker-type conviction under the

wrong statute of 175, the Chemical Weapons Implementation
Act not only established the Schedule 1 list, (22 USC
§6701(10)) and established the regulations (via the State Dept.
and the Department of Defense, further tying Schedule 1 chemicals
to 229 (supplement No. 1, 15 CFR 712).

≡ see Exhibits 3 and 4 ≡

but then took the extraordinary step of defining additionally
defining a "Biological Agent" in such a clear and specific way to
avoid another wrong Baker-type conviction so that any person of
normal intellect can clearly see prevents ricin toxin from being considered
an infectious micro-organism biological agent or germ warfare.

22 USC §6771(c)        ≡ see Exhibit 5! ≡

It is possible to see such confusion in 1993, but this approximately
is a quarter century later; this is 2015! the law has been
changed. And not changed in a way that could ADD to any
confusion but things are MORE clearly defined now, not less.
The law changed when it specifically Excluded ricin from
175 by specifically designating it as 229. How convenient,
that this particular government failed to fully enlighten the Court.'

It is also very noteworthy, this particular government
failed to mention in its response that the 33 month sentence
and "ricin" conviction in Baker was REVERSED in the
8th Circuit Court of Appeals.

The prosecutors attempted use of Baker is a horrible
example to defend their position, but nothing, nothing can possibly
ever compare to the giant misstep of the next case they
try to cite. Hale. Hale is the singlemost bad example in history.

3 - United States v Hale

This will go down in history and future 'Prosecutor's Handbooks' as the prime example of "what NOT to do to win your prosecution."

This is the most perplexing case law decision ever cited by a prosecutor since it irreparably damages this government's position so severely, so totally, so conclusively that it alone, demonstrates grounds for reversal of Dutschke's false conviction of §175.

In fact, petitioner Dutschke, himself, could not have picked a better case than Hale and why, on earth, this government's own prosecutors would cite it is beyond all comprehension. This government should have, for its own sake, avoided Hale like a real plague as citing this case, above all others, dooms their own position so totally that the petitioner secretly hoped they'd be foolish enough to actually bring it up.

They did.

This requires such attention, the petitioner must devote an entire section to Hale below, as this one case proves and brings to light the actual legally appropriate indictment.

D - The more legally appropriate indictment - 1038

This governments response falsely claims that petitioner Dutschke's stance is that the appropriate indictment should have been 229 instead of 175. That is false. Neither 229 or 175 are legally correct since the 2013 KC letters did not contain anything toxic at all. 229 would only be appropriate, legally, if the substance in question was "knowingly" above

the prosecutorial threshold. It isn't.

Dutschke's reasoned stance, actually, is that the proper indictment, legally, would have been 18 USC § 1038(a) and that indictment should have involved the Mailer not the maker, since there is NOTHING, at all, anywhere in any statute or regulation that criminalizes "producing" a totally inert substance that is completely harmless, whether fertilizer or not.

18 USC § 1038 (a):

"makes criminal any conduct with intent to convey misleading information that may be believed... that would constitute a violation of..." 18 USC § 229 (chemical weapons)

‡ See Exhibit 13 ‡

Or even 18 USC § 175 (Biological or Germ Warfare Agent)

‡ See Exhibit 14 ‡

In fact, Case law makes it CLEAR that this is the accepted view of the Courts as well.

The 1038(a) statute is specifically written for the exact purpose, at hand, prosecuting letters that, although NON toxic, were reasonably believed to be toxic (via 175 or 229). The petitioner need not look back to 1993 to conclusively show this is clear case law. Note that the Maximum sentence for 1038(a) is only 5 years, twenty shorter than the sentence from the broken plea agreement in this case.

1 - Joseph Wynn Young. (5 year conviction with extensive criminal history for anthrax letters to Senator Saxby Chandliss that were, infact, harmless. Ga 2005)

2 - United States v Marc McMain Keyser 704 F3d 631 (9th Cir. 2012) convicted of 18 USC § 876 and 18 USC § 1038(a) for

"Anthrax" mailing to California Congressman Radinovich that actually confirmed not toxic at all, but a powdered sweetener. Sentenced to 51 months by Judge Damrell and the appeal was affirmed as a proper conviction under 1038(e) by 9th Circuit Judges Smith, Reinhardt and Clifton (although the sentence was shortened due to the original judge's error in interpreting the guidelines).

3- United States v. Rene Robert Montoya - 486 F. Supp 2d 996 (Az 2007)

The conviction of 1038(a) was proper as the mail bomb "was actually just three simple road flares taped together to simulate commercial-grade dynamite."

4- United States v. Brahm 520 F Supp 2d 619 ( DC NJ, 2007)

§1038(e) required use of objective standard in determining if statement is criminally culpable regarding radioactive explosive device claim at football stadium though no such explosives actually existed.

5- United States v. Herbert Nixon 664 F 3d 624 (6th Cir 2011)

§1038(a) conviction deemed proper for anthrax letters to a US Federal Judge that threatened the judge's life however turned out to contain harmless powder. Of course judge Hayes sentenced Nixon to the maximum 60 months (plus 3 years with no contact with any postal employees) and affirmed by 6th Circuit judges Siler, Kethledge and Adams.

6- United States v. Chad Conrad Castagana 604 F 3d 1160 (9th Circuit 2010)

Conviction of 18 USC§1038(a) was deemed proper of anthrax letters to U.S. Congresswoman Nancy Pelosi and Senator Charles Schumer as well as John Stewart, David Letterman and

Keith Olberman which were discovered to contain only harmless laundry soap and cleaner. Sentenced by Judge Cooper and affirmed as proper conviction of 1038 by 9th Circuit judges Canby, Wardlaw and Callahan.

The law itself, as written, and case law makes it abundantly clear that 18 USC § 1038(a) was specifically crafted for the case at hand. 1038(a) was specifically born from the Intelligence Reform and Terrorism Prevention Act of 2004, Pub L. No 108-458, 118 Stat 3638, and was obviously not available prior to 2004 as a tool for prosecutors, but since has been proven proper. It is clear and obvious that the original sponsor, Representative Smith, as well as the entire Congress and President George W. Bush designed 18 USC § 1038(a) for the very purpose of prosecuting NON-toxic threats that were believed for whatever reason to actually be toxic.

The actual case law above supports this truth.

And then we have Hale.

7 - United States v Hale 762 F3d 1214 (10th Cir 2014, 135 Supreme Court 1464 (2015)

This particular government cites Hale to defend its position that 175 is proper. For the lack of any better word, citing this case is the single most... boneheaded move imaginable. It severely and totally damages their own position that 175 is proper (instead of 1038)

If there was one single case the petitioner would have "sand bagged" for himself, Hale would be it. The petitioner thanks the prosecution for trying it, but this government, citing Hale, loses all credibility henceforth explained below.

a - First, the Respondent cleverly implies that Hale was convicted of 175: (from page 31 of gov. response)

"Hale challenges his conviction for... a hoax involving biological weapons... argued that §175, the predicate statute underlying his... conviction, is unconstitutional."

What the Respondent slyly hid from this Court through "oh, so clever" language is that...

Hale was NOT convicted of §175!

Hale was NOT convicted of a biological weapon!

In fact, Hale was convicted of... 18 USC § 1038!

I see the above six case law examples:

The Respondent is obviously trying to mislead the Court, which should be sanctionable, by entirely misrepresenting their own cited case to protect their conviction.

b - Furthermore, Hale appealed his conviction of 1038, just like most of the other six examples cited in this reply, and in an equally bone-headed move, claimed citation error.

Hale's original 1038 conviction was for a harmless substance sent to a bureaucrat that purported to be 'hanta virus'

On appeal, Hale claimed that he should have been charged with an actual biological weapon (175) instead of 1038.

The move was questionable, but he cited Bond. In other words Hale actually argued FOR a conviction of (175).

In very plain language, the 10th Circuit stated,

"We must disagree."

Because, they explained, the substance Hale mailed was actually NOT the harmful hantavirus it was

purported to be 175 was NOT proper and 1038(a) was.
The Court upheld the 1038 conviction as proper.
But in reading the prosecutors response here, one would be misled
to believe the 10th Circuit upheld an actual biological
weapons conviction when in all actuality, and the
easily verifiable truth is the exact OPPOSITE of
what this particular government describes.

Fact - In short, the 10th Circuit told Hale "Since the substance
was NOT a harmful virus, you could NOT be convicted
of §175, so §1038 is proper and affirmed."

C - This particular government tries to minimize the landmark, unanimous
U.S. Supreme Court's 2014 Bond decision by confusing its
relation to Hale. Specifically the respondent wrote:

"Hale perpetrated a hoax that HAD it involved
the virus it was purported to involve would have been
covered by §175... even in light of... Bond"

In writing this sentence out of context, on page 33, this
governments response hopes the Court will ignore the
appeals courts intent - "If it had involved the
virus, it would have been covered ... 175."

But the fact, clear to the judges, was it did NOT involve
actual hantavirus so it was NOT covered by §175, hence
their affirmation of §1038!

Of course 175 would have covered Hale if it HAD actually
involve hantavirus. But it didn't ... so it couldn't.

Hale argued he "actually committed a violation of §175"
The courts said, 'No you didn't' and affirmed 1038 as proper.

Perhaps the government prosecutors should be more diligent in their Constitutional duty to give the Court correct information.

It is simple, the 10th Circuit opinion makes clear that, since there was no actual harmful hantavirus, §175 was NOT proper and §1038 was affirmed as proper, not in spite of Bond but because of it.

"Moreover, given the Supreme Courts holding in Bond, it is FAR from clear that the material could support a conviction under §175." (135 S.Ct 1464) 762 F.3d 1214 (10th Cir, 2014)

The Case Law examples above, and many more beyond these seven, clearly shows that in every single instance involving cases of the one at hand, Courts have upheld §1038 as proper, every time, including Hale.

The prosecutions entire creative sly cherry-picked misinterpretation and misrepresentation of Hale is disingenuous at best and should not be tolerated by a fair court. The very case cited by this government, the Hale case, perfectly encapsulates the petitioner's stance that a harmless substance in a letter, threatening or not, is a potential violation of 1038, but in no way an actual violation of an international treaty driven statute relating to biological warfare (175).

In researching for this original 2255 filing, the petitioner studied this case thinking, "Theres no way in Hale THEY would be witless enough to let this come to light."

But they did, and in so doing, demolish fatally their own tenuous position in regards to the citation error. The 10th Circuit, along with

60

the 9th, the 6th and other courts including the Supreme
Court, has ruled. It is settled.
Note-also on page 32 of this governments response, they
mention keyser (see #2, above), and conveniently forget
to alert the Court that keysers conviction, upheld, was
also 1038 and NOT 3175. (D-2 above)

This particular government has provided absolutely no
valid reason at all why the 10th Circuit legal precedent of Hale
(affirming 1038 and rejecting (175), as well as the 9th and 6th
should not be followed, to the contrary, it is this government
that cited Hale in the First place, as the case law to
be used as an example. The petitioner Dutschke agrees, Hale
should be the example and 175 should be rejected.
Hale does not support §175.

It is shocking that the author of this governments response
would, in one swift move, completely doom their tenuous
position and prove the petitioner's stance, but that is without
question what they have done.


Their argument regarding the citation error (175 vs 229 or 1038)
is totally without merit and has been rejected by the higher courts
and should be precluded from consideration. The higher courts
have addressed this issue in numerous cases (including Hale and keyser)
and this issue is settled, their argument in defense of 175 is
specious and inadequate.


It is painfully obvious by now that the prosecutors have known

61

for some time that no biological weapon or germ warfare was involved here. But now, as part of their scheme to protect their conviction and avoid politically damaging truths, they must now convince this Court that the law, as written is wrong and the prosecutors are right. They must also convince the court that the following are also wrong:

The 100 other nations who signed the treaty, the lawmakers, scientists, dictionaries, textbooks, teachers, students and the presidents who signed the legislation.

But in attempting to address established case law, these prosecutors from Mississippi have added to their list of those who they need to be wrong:

The U.S. Supreme Court justices (all of them), plus judges from everywhere else in the land - Kozinski, Pregerson, Reinhardt, Thomas, Watford, Damrell, Clifton, Smith, Siler, Kethledge, Adams, Cooper, Canby, Wardlaw, Callahan and Aspy. Since Judge Aycock mentioned the Annex (on chemical weapons), then she, too, needs to be added to the list that these prosecutors need to be wrong, just so they can be the only ones right.

In trying to convince the court that all the above are wrong and they are right, this particular government, bumbling through their ever-changing tenuous positions, hopes the Court wont simply read the actual statutes, as written by the lawmakers.

Grounds 1 and 2 simply require a statutory analysis and:

"A statutory analysis begins with the actual language of the statute."

Perez-Olivo v Chavez 394 F.3d 45, 49 (1st Cir 2005)

This case falls squarely within the heart of 1038, a fact which is indisputable. The very reason the lawmakers wrote the statute in 2004 is the difference between 1038 and 175/229, that is whether there existed actual endangerment or perceived endangerment (or aprehension). If there is no actual endangerment, which is required of 175 and 229, then it falls under §1038.

Otherwise there would have been no need for §1038.

Remember it is this government, itself, by mentioning Hale, that opened this door in its response. Likewise, in baffling fashion reminiscent of keystone Cops, they open the door, and this time wider and fatally so, and beckon for yet another statute when they insisted upon (from page 17 of the response) the application of the Select Agent and Toxin List.

Here they reveal (page 17) their final fatal flaw.

= Exhibit 9 =

E - "Select Agent ; Certain other agents" (18 USC §175b)

This particular government insists on page 17 of its response upon using the "HHS Select Agents and Toxins list to categorize ricin 42 CFR §73.3

The Select Agent and Toxins list of 42 CFR §73.3 was set up by the Public Health Service Act (42 USC 262a) which implemented 18 USC §175 b.

The respondents page 17 insistance on following the HHS Select Agents and Toxins list is just as fatal to their tenuous position on Ground I as it was on Ground 2.

1- As the Select Agents and Toxins list applies to Ground 1, the citation error covered in this section, it is easy to see that the Statute tied to the HHS list shows Total prejudice in their argument; that statute, 175b, as written by the lawmakers prohibits possession or transfer of a select agent or toxin by a penalty of NO MORE than 5 years imprisonment.

Therefore - since they insist on the Select Agents list they insist on the Select Agents statute, 175b
That statutes penalty is no more than 5 years for possession ( petitioner was not in possession )
or for transfer ( which they will never concede or admit)

That IS the statute as written, for the list they insist upon. So respondants page 17 admits, in quite a bumbling fashion, the citation error; and insists on curing it with another citation error with a 5 year maximum and elements that are not at all met for guilt! It is likely these prosecutors hope the court gets fooled by their slight-of-hand and chooses not to actually read 42 CFR § 73 (d) (2) & (3) or the statute that it is tied to, 18 USC §175b (b)(i) and (c)(i)

≡ Exhibit 12 ≡

It must be noted that the first words of 42 CFR 73.3 ( the Select Agent list they now insist upon) state clearly:

"Except for exclusions under paragraphs (d) and (e) of this section..."

Paragraph (d), explicitly excludes from prosecution "less than" "100 mg ricin", which completely brings ALL of the governments arguments to a complete stop.

It is a perplexing thing why or how the respondent

64

cripples their own arguments with this new insistance but with one single blow (two if one counts the Hale citation) they have done just that. This, though, goes far beyond this government "shooting itself in the foot", this is a catastrophic implosion, and the baffling thing is that THEY are the ones responsible for it. The petitioner himself could not have "sandbagged" such sabotage if he tried.

So the Court should look, soon, for yet another change of position, since all the rest have failed on the facts, and this new insistance to use ricin as a Select Agent, and pointing to 42 CFR 73.3, fails by its own language to include the Dutschke case. The Court should now watch the prosecutors now squirm away from this newfound position of theirs. Yet another story they cannot stick to.

The reason this particular government must now, again shift its position and run from their own insistance in their response (page 17), is because the law itself, inarguably proves these prosecutors have no merit whatsoever to any argument they could have or already have made, even though their positions keep changing.

This Court should proceed, not by fishing for some way to agree with these prosecutors mythology, but based on the actual statutes and regulations, the law, as it is written and intended by the lawmakers themselves and made evident by the actual evidence and the actual plain, explicit and obvious language of the statutes free of entangling interpretations. This case is not as confusing as these government prosecutors are trying to make it.

It is simple.

The Citation error is real. It is not harmless. It is obvious.
It is evident. It is misleading. It is prejudicial.

The question is very simple:

"Was there any real, actual endangerment from a real
and actual pathogenic infectious agent of biological
germ warfare?"

The honest answer is indisputably clear.

There was not.

Therefore, no §175.

VIII   Ground 3 — The Interpretive argument as decided by
the U.S. Supreme Court justices in unanimity.

Ground 3 is all about the "reach" of the statute (§175),
in other words, does the reach of the statute extend to what the
actual evidence demonstrates.

As such, this issue is of the jurisdiction of the statute
itself. As already established:

"Jurisdictional claims are never waived" United States
v. Cuch, 79 F.3d 987, 990 (10th Cir 1996)

United States v Mitchell 867 F.2d 1232, 1233 n.2 (9th Cir 1989)

Price v. Pierce, 617 F.3d 947, 950 (7th Cir 2010)

Kelly v United States, 29 F.3d 1107, 1113-1114 (7th Cir 2004)

Thor v. United States 554 F 2d 759, 762 (5th Cir 1977)

United States v Milestone 626 F.2d 264, 266-267 n.2 (3rd Cir 1982)


This involves the clarification of interpretation by the
U.S. Supreme Court 2014 Bond case, or the interpretive argument
that the Justices clarified so well in addressing these issues.

Using the wisdom and guidance of the highest court in the
land that decided in unanimity, the Justices made clear that
this governments interpretation is wrong and a conviction was:
"not a realistic assessment of congressional intent"
and would give the statute:
"a reach exceeding the ordinary meaning of the words Congress wrote"

As such, a conviction using this governments interpretation
would have resulted in a 'complete miscarriage of justice'

"Complete miscarriage of justice standard is satisfied if the

defendant is convicted under an erroneous interpretation of law."

United States v. Bonnette 781 F.2d 357, 363-64 (4th Cir 1986)

The cause and prejudice standard (whether guilty from plea

or jury), such as is often cited in United States v

Seglar (5th Cir 1994) and Williams v. United States (7th Cir 1986),

simply do not apply to either jurisdictional issues or issues of a

magnitude that result in a 'miscarriage of justice'.

A conviction, then, based on "an erroneous interpretation of law" clearly

nullifies any attempt to procedurally bar a fair hearing of

an issue raised for the first time. (Although, the exact issues mentioned

by the Justices in Bond mirror Dutschkes location from the 2014

Sentencing hearing – the "water pistol" discussion – and PRIOR to the

Bond decision)

A – This particular governments treatment, summarily dismissing the

Unanimous landmark Supreme Court decision, in this governments

preceeding response, shows that it clearly either does not understand

the Supreme Courts sound logic, or simply doesn't want to.

The biggest clue they don't understand it or are being intentionally

misleading can be found on page 15 of their response:

"Bond does not remotely suggest that Congress attempted to exempt

the possession of ricin when it banned the possession of biological

toxins in 175"

That deceptive statement is so loaded with presumptive misinformation

that a used-car salesman would be proud of it. If the petitioner

must debunk every single sentence of their response to prevent

their snake oil salesmanship from becoming accepted, then so be it.

68

1- Bond did not NEED to address any exemptions. No one ever claimed it did. The exemptions were not the issue in Bond and weren't mentioned. However, the exemptions from prosecution, which ARE specifically written into the law and specifically about "ricin", were in fact, put there by Congress! And those exemptions were put there in regards to the statute that is written to cover "ricin", 229, NOT 175 (see Ground 1/citation error).

2 - The prosecutor's page 15 statement seems to suddenly, now, allege possession of an infectious germ warfare agent. This is a first. They have yet to make a single claim of any actual quantity in the petitioner's possession at all (because the factual quantity is ZERO!) Are they now, 2 years later, alleging possession? No one seems to know exactly what is even being alleged anymore. The petitioner, and the rest of the world, was (mis?) led to think it was "production", but it is so hard to keep up with their ever-changing story.

3 - Congress did not ban possession of germ warfare agents at all with 175, but merely "enacted" the ban against weaponized biological agents as the Biological Weapons Convention treaty (see Ground 5 and Scalia, Thomas, Alito's discussion in Bond of how improperly enacted legislation is not legislation); However that argument will be explored further below.

What Congress DID properly enact, however, was a ban on (possession and transfer) of such infectious germ agents and toxic (such as "ricin") chemicals with the Public Health Service Act (42 USCS §262a) which enacted 175b and the "Select Agent" statutes, (see Ground 1), along with the Select Agent exemptions (including "ricin").

B - The United States Supreme Court Justices, in their unanimous Bond decision made clear unignorable truths.

First look at the Supreme Court's decision summary as written by Chief Justice Roberts ? (in the exact language)

"Held : Section 229 does not reach Bond's simple assault."

Then, the majority opinion goes on to explain why, and at least two of the well-thought out important points were specifically addressed, and at length, by Dutschke during the sentencing hearing. Those two main points held by the Supreme Court, obviously in total agreement with the petitioner are :

1 - A "weapon" must actually be a weapon.

    a - This particular government tries desperately to sell the idea that this substance they claim from the KC letters, a substance that everyone (including their own "sophisticated laboratories") now knows was completely harmless, must still somehow be considered a weapon of mass destruction akin to a crime of war of such deadly seriousness that it takes an international treaty and 100 different nations to prevent "widespread casualties" and is "one of the greatest national security threats facing the United States."

        Although such an assertion, on its face, is a joke, it should be given not even the dignity of a slight chuckle.

    b - The prosecutors, alternatively, did change their argument to suggest that : although the KC letters were harmless, this same harmless, NON toxic substance should be treated the same as a disease causing infectious pathogen capable of exterminating entire populations, even though they know this is NOT toxic.

It should be noted that that very same argument made by these prosecuting lawyers from Mississippi was made by the Solicitor General and his team before the Supreme Court Justices in Bond, who utterly rejected that absurd argument by the government.

- The chemicals Bond used in her "attack" was an arsenic compound and potassium dichromate,"

   "both ARE toxic to humans and in high doses, lethal"
- At one point Haynes, the woman Bond was harrassing, suffered a chemical burn, but after washing her hands, it was minor
- The Solicitor General failed in his argument to insist the arsenic compound was a "chemical weapon". It WAS harmful, but it was not toxic
- In this particular case, these government lawyers make the exact same argument, but without the Solicitor General's advantage (of evidence of some, although mild harm), since the KC letters were not toxic and completely harmless.

The United States Supreme Court, in rare unanimity, decided it was utterly absurd for a chemical weapons prosecution of a substance that was moderately harmful.

How then would those same Nine Justices feel about a substance that was not harmful at all?

   - What the court made clear is that toxic must mean toxic, and a weapon of war must be capable of actually being a weapon of war. This is undisputable and unignorable, which is why the respondents urge ignoring this now established case law of our highest courts

Just like everything else that has been favorable to the petitioner, they seek to bury it.

2 - An international treaty addressing the "global need to prevent" the deployment and proliferation of chemical weapons and chemical warfare simply "does not reach Bond's simple assault"

The behavior alleged in Bond is NOT at all what the 100 nations, and the US Senate and president had in mind when they ratified the treaty or when "enacted" later by Congress. It is "not a realistic assessment of Congress's intent"

Trust Justice Roberts to put it diplomatically, instead of saying, "not ... realistic" the majority may have written, "complete fantasy"

If there could have existed, before Bond, any ambiguity in interpretation, it has now been cleared up by the U.S. Supreme Court Justices, who find themselves in agreement (as evidenced by their June '14 opinion and ruling) with the petitioner, Dutschke, (May '14 locution). This, whether the Mississippi prosecutors like it or not, is now case law, as it now stands, by the highest Court in the land.

Other courts (such as Hale, 10th Circuit) recognize this already and follow it (upholding 1038 instead of 175).

This particular government's absurd attempt to repeat the same argument, which failed the Solicitor General, should be ignored as it is entirely without any legal merit.

The interpretive argument and issue is settled.

72

This Ground (3) as well as Grounds 1 and 2, clearly
demonstrate prejudicial errors that "if condoned would result in
a complete miscarriage of justice." (see Bonnette)

    And, therefore, cannot be condoned.

    United States v. Pierce 959, F 2d 1297, 1301 (5th Cir)

                   113 S. Ct 621 (1992)

    United States v. Shaid 937 F. 2d at 232 (5th Cir-1991)

IX    Ground 4 - Ineffective assistance of Counsel

   Both 'prongs' of the Strickland test are, in fact, met. This particular governments response to the valid issues raised is clearly a combination of more entangling confusion and outright lies mixed with irrelevant misstatements. Both Strickland and the governments UNTRUE statements should be addressed to avoid assumptive acceptance.

A - The False Statements

1 - "Counsel for the defense did recognize and address this issue (the trace exceptions written into the statute) by way of objection --- the Court rejected that argument."

   a - This is potently and demonstratively false. It is a bald-faced, clintonesque lie not grounded in a shred of truth. The petitioner was there, Judge Aycock was there. Who does the prosecutor think they are kidding with that absolute falsehood?

   Appointed counsel Coghlan did NOT, at all, address the trace impurities exemptions to anyone -- ever. He did mention toxicity, but not the trace impurities exemptions or the Annex on Chemical Weapons or any part of any statute at all which specifically mention 'ricin' and preclude this case from prosecution under 175 or 229.

   He did NOT mention the trace impurities exemptions for 'ricin' because he was not even aware of them. Therefore, he did NOT "address" this issue as the prosecutors falsely claim, nor did "the Court reject that argument" because the issue was NEVER brought up!

The reason this government cannot provide a shred of evidence to support their claim that either counsel "addressed" or the "court rejected" the issue is because the transcript shows otherwise.

Why? Why is this prosecutor allowed to continue blatant lies in court filings then pretend their fabrication is accepted?

Why do they automatically assume that a statement of the record (which is so easily disproven by the record itself) and is entirely and utterly false is automatically allowed?

If government prosecutors are allowed to outright lie, and never be challenged or sanctioned, is it any wonder that they do?

The burdon, however, and rightly so, is now on this government who made such a bald-faced claim. So this challenge now, must be met by the one who made the claim, this government to PROVE its case.

"—If the answer indicates the existence of transcripts or briefs that are relavent to the disposition of the motion, the government, not the movant, must be ordered to file the needed records."

Therefore, the burdon of proof is on this government to prove this claim; the prosecutors have failed to show any evidence at all that appointed counsel raised the issue of the trace impurities exceptions "by way of objections", the prosecutorial thresholds which would have prevented this false prosecution

This government will not be able to provide such proof because none exists.

Likewise, government prosecutors will find no evidence whatsoever that the Court "rejected" the statutory requirements of 'ricin' that specifically relate, in any way, to the trace impurities exceptions written into law, because it was never raised prior to the filing of the §2255.

The governments false, unprovable claim of the record now ensures a hearing on this, and other issues.

(Remand is necessary to reconsider sufficiency claim)

<u>Nash v. Eberlin</u>, 437 F.3d 519, 524-526 (6th Cir 2006)

<u>Magowirk v. Phillips</u>, 144 F.3d 348, 363 (5th Cir 1998)

<u>Jones v. Wood</u>, 114 F.3d 1002, 1008 (9th Cir 1997) (Failure of district court to review transcript left 9th Cir "no alternative but to reverse")

**2** – The second falsehood is actually a list of several which are in no way relevant to 175 at all, but are still false and cannot be left without reply.

**a** – "letters to victims & labels affixed... printed on petitioner's printer" – irrelevant entirely to 175, but still false.

**b** – "his computer contained evidence of research into ricin production" – False

**c** – A dust mask from dojo found with 'ricin' & DNA – FALSE

**d** – "audiotaped attempting to have 'ricin' produced" = False, Irrelevant to this 175 conviction, but there was NO "ricin toxin" "recipe"

B - The petitioners Affidavit.

It is imparative to note and consider the petitioner's affidavit which discusses, in detail, appointed counsel Coghlan was misled by prosecutors in categorizing ricin as an infectious pathogenic biological agent (175) and believing that toxicity did not matter to sentencing.

The affidavit states clearly : at no time did appointed counsel Coghlan indicate in any way any awareness of the Annex on Chemicals, the Chemical Weapons Convention itself, the specific statutes that explicitly name and identify 'ricin' Round-to-zero rule, the HHS Select Agents and Toxins list or the trace impurities exemption, any cases of 1038 or 1038 itself or the CFR lists and regulations that specifically and explicitly control 'ricin'. Any one of the previous list would have precluded entirely this case from prosecution under 175.

In fact, Coghlan did not look beyond 175 and 178.

1 - On this issue, this case enters into completely unchartered waters. Just as it is a prosecutors Constitutional duty to disclose evidence favorable to a defendant, it should be considered the same duty to disclose those elements of a statute, as written, that makes that evidence favorable.

In other words a prosecutor not disclosing parts of the law that are favorable to a defendant should be treated the same as not disclosing favorable evidence ; or the failure, in this case, to disclose "ricin specific law" (which does NOT include 175 in any way) is a Brady violation

Although this, as an issue, has likely never been before any

77

court before, it is relevant here because in this case, Prosecutors went a step beyond not saying something and made the false claim to appointed counsel Coghlan that any alteration of a flower's seed is somehow a violation of 175, even if it does NOT create an infectious pathogen resulting in toxicity. In other words, they lied to him too.

Some prosecutors and legal scholars may say "So what? Let the defendants attorney figure it out."

That would be easier to accept if the issue was simply the silence of the prosecutor. In this case, it isn't. This is about the willful and explicit misrepresentations of a prosecutor to appointed counsel. This unsettling disregard for fairness and justice must, in this form, be considered a Brady violation, typical of the prosecutorial epidemic spreading through courts like a true pathogen. As long as it is allowed by the courts, it will continue, but the 9th Circuit judges in the Olsen case are right, "Only judges can put a stop to it"

Smith v. Cain 132 S. Ct 627, 181 L. Ed 2d 571 (2012)

United States v. Sedaghaty 728 F. 3d 885 (9th Cir 2003)

Aguilar v. Woodford 725 F 3d 970 (9th Cir 2013)

United States v. Kohring 637 F 3d 895 (9th Cir 2010)

Simmons v. Board 590 F 3d 223 (3rd Cir 2009)

Douglas v Workman 560 F 3d 1156 (10th Cir 2009)

Harris v. LaFler 553 F. 3d 1028 (6th Cir 2009)

United States v. Zomber 299 F Appx 130 (3rd Cir 2008)

United States v. Triumph Capital 544 F 3d 149 (2nd Cir 2008)

United States v Aviles-Colon 536 F. 3d 1 (1st Cir 2008)

United States v Sipe, 388 F. 3d 471 (5th Cir 2004)

Horton v. Mayle 408 F 3d 570 (9th Cir 2004)

Monroe v. Angelone 323 F. 3d 286 (4th Cir 2003)

United States v Lyons 352 F. Supp 2d 1231 (MD Fla 2004)

Watkins v. Miller 92 F. Supp 2d 824 (S.D. Ind 2000)

United States v. Dollar 25 F Supp 2d 1320 (ND Ala 1998)

People v. Uribe 162 Cal. App. 4th 1457, 76 Cal. Rptr. 3d 829 (2008)

Miller v. United States 14 A. 3d 1094 (DC 2011)

Deren v. State 15 So. 3d 723 (Fla. 2009)

Walker v. Johnson 282 Ga 168, 646 SE 2d 44 (Ga 2007)

Aguilera v. State 807 NW 2d 249 (Iowa 2011)

De Simone v. State 803 NW 2d 97 (Iowa 2011)

Commonwealth v Bussell 226 SW 3d 96 (KY 2007)

State ex rel Engel v Dormire 304 SW 3d 120 (Mo 2010)

Duley v. State 304 S.W. 3d 158 (Mo Ct App 2009)

People v. Garrett 106 AD 3d 929, 964 NYS. 2d 652 (NY 2013)

Pena v. State 353 SW 3d 797 (Tex 2011)

State v Youngblood 221 W. Va 20, 650 S.E. 2d 119 (W. Va 2007)

The U.S. Attorneys in Oxford MS can now add their names to the ever-growing list of prosecutors that "behave with such casual disregard for his constitutional obligations and the rights of the accused" (see Olsen) "When such transgressions are ... forgiven by the courts, we endorse and invite their repitition."

Why does the petitioner argue in this reply (IX, B, 1) that a prosecutor purposely misleading defense counsel about a statute is a Brady violation?

Because enforcing prosecutorial integrity is not just in the defenses interest, it is in everyone's interest.

79

C - Strickland test is easily met ( deficiency and outcome)

1 - In regards to deficiency -

a - Appointed Counsel Coghlan DID know the NON toxicity of the fertilizer, which was NOT 'ricin', was key.

b - Counsel showed he valued the NON toxicity by mentioning it at sentencing in regards to 'points'

c - He was in contact with leading experts

d - Those experts were experts in proteomics and organic chemistry, not experts in the law. They could speak easily to and know about toxicity and testing methodology, but not to the legal language of statutes, exceptions specifically written into the law, the intent of Congress or legislative history.

e - Coghlan was not aware of ANY of the 'ricin' specific language written into law such as : Round to Zero, the Annex, the Chemical Weapons Convention, Supplement 1 to 15 CFR § 712, the 1999 provision of 22 USC § 6701 (c) which specifically defines "Biological agent" and eliminates 'ricin', the 2002 Public Health Security and Bioterrorism Preparedness and Response Act and its corresponding HHS list of select agents and toxins which excludes trace impurities (42 CFR § 73 (d)(2) and (3)), the 6701 list identifying 'ricin' as a chemical weapon to be prosecuted under 229, the exact language of 18 USC § 1038 under which all modern similar cases have been 'proper(ly)' convicted and affirmed by the higher courts, or the statute tied to the Select Agent list the prosecution now insists upon, which is 175b, or the 5 year maximums of these more appropriate statutes. In short, Coghlan was unaware of Exhibits 2-14 of this filing.

f - It is an obvious deficiency to stay unaware of the "ricin" specific language in the laws, doubly so in a case so high-profile.

g - Coghlan was directed by the petitioner himself to research exactly that legislative history which would have quickly uncovered "ricin" to be a chemical, not biological weapon, then led to the other explicitly written language by the lawmakers within the statutes precluding this from 175 prosecution. Petitioner Dutschke did so with barely any resources at all and in 3 hours.

h - knowing the actual laws one is defending against is not only essential for a vigorous defense, but should be considered a very basic requirement.

Deficiency, then, is clearly demonstrated, and all these easy to find resources were readily available at the time, hindsight is not needed. Lavernia v Lynaugh 845 F.2d 493, 498 (5th Cir 1988)

Petitioner Dutschke, using only a limited version of Lexis Nexus and no legal assistance, direction or other references, located and printed everything referred to in this filing within 3, 1 hour sessions while in a Supermax prison under a SAM order. Appointed Counsel Coghlans resources are almost infinitely greater. Section VI, D, 1-7 of this reply briefly show seven other cases (including Hale) of 1038 convictions (beginning on page 55 of this reply) each of those examples were represented by attorneys with similar resources to appointed Counsel Coghlan. Each of those cases pre-dates this one (hindsight was not needed). Each of those was upheld by higher courts as proper for 1038.

The petitioner has revealed, probably in greater detail

than the Court wanted, with specificity and providing
actual statutory evidence using Exhibits 2-14, and all
the cases cited in Ground 1 (pages 55-66 of this reply) what
would have been discovered by appointed Counsel Coghlan,
if he had not been misled by the prosecutors. There can be
no doubt at all these vital informative cases, statutes,
laws and history would have been uncovered. United States
v Green 882 F2d 999, 1003 (5th Cir 1989)

    Had appointed Counsel followed through at the
petitioners urging he would have acted on it, he most certainly
would have informed petitioner Dutschke of all of the above.
Coghlans obvious belief that NON toxicity was key is evidence
enough it would not have been ignored easily clearing
any objections by the government in the way of Carter v.
Johnson 131 F3d 452, 465 (5th Cir 1997)

2 - In regards to the Outcome prong of Strickland -

    a - Non toxicity was important to Coghlan. As evidenced by mentioning
    it in reference to sentencing points, and consultation with the experts.
    Even the mississippi prosecutors concede this.

    b - Coghlans procedures during sentencing reflect that any knowledge
    Coghlan would have had about the statutory language (the trace
    impurities for example) that matched his knowledge regarding
    the purity would have been integrated into actual defense.

    c - Coghlan did NOT inform Dutschke of this exculpatory information.
    That ALONE "rendered the result of the proceeding
        fundamentally unreliable" Vuong v Scott, 62 F3d
            673, 685 (5th Cir 1995), 116 S. Ct 557
                133 L.Ed 2d 458 (1995)

82

d - That Judge Aycock was already aware of the Annex on Chemicals shows that she knew more than both the prosecutors and appointed counsel. And, as the transcript indicates, she would have heard, if necessary, "weeks of expert testimony", in her words, and was willing to do so in the interest of fairness.

This indicates she would most certainly have considered the actual statutory language, as it is written into law, given the forum, which would have been uncovered; preventing prosecution of 175. In light of all the above, " there is a reasonable probability of a different outcome," United States v. Kinsey (5th Cir 1990) This is to say not just a 'reasonable probability of a different outcome' of defense strategy, but a 'reasonable probability of a different outcome by the petitioner (who had NO affirmation from his appointed counsel of what he suspected statutorally correct); and a 'reasonable probability of a different outcome' in regards to the Judge herself, who already seemed open to the discussions, even interested.

The second prong of Strickland, then is easily met using the far-too commonly cited standards:

Lockhart v. Fretwell 506 US 364, 369, 113 S.Ct 838, 122 L Ed 2d 180 (1993);

Sharp v Johnson 107 F.3d 282, 286 n.9 (5th Cir 1997)

and United States v. Drones 218 F.3d 496, 500 (5th Cir 2000)

D - Once again, the prosecutors are trying to take a very simple issue and over complicate it.

There are only TWO possibilities:

Either appointed counsel knew of the 'ricin specific' language within the statutes as written, or he did not know.

(And remember, 'ricin' is mentioned throughought the statutes and regulations in several places - but NOT in 175)

1 - 17 appointed Counsel Coghlan did NOT know the ricin specific language and regulations, that is clearly ineffective.

or

2 - 17 appointed Counsel Coghlan DID know but kept all that information to himself, that is clearly inneffective.

There is no third possibility.

Whether he did or did not know, either way, it WAS, in fact, inneffective. There is simply no way 'around' it.

**IX** Ground 5 is the Two-pronged Constitutional Argument.

The government's response shows that the author of the response simply did not understand Petitioner Dutschke's well-reasoned stance, which is the exact same as is written in _Bond_ by Justices Scalia, Thomas and Alito.

As this government's response meanders around constitutional arguments from _Hale_ and _Levendari's_ one has to wonder why? Neither are the least bit similar or the least bit relevant. Petitioner Dutschke paid absolutely no attention to any discussion of constitutionality whatsoever in _Levendari's_ or _Hale_, and did not bother with similar arguments. The plain case laid out by Justices Scalia, Thomas and Alito in _Bond_, likewise, in no way relates to _Hale_ or _Levendari's_. The prosecution's discussion of constitutional arguments from _Hale_ and _Levendari's_ are, in fact, superfluous, unnecessary, frivolous and completely an immaterial waste of time.

These prosecutors do not get to put words in the petitioner's mouth or just change or ignore the petitioner's argument without Petitioner Dutschke responding in exhaustive detail.

Instead of paying any attention to the prosecutors predictable 'naysaying', the petitioner agrees with and supports the constitutional stance that is well informed by more experienced constitutional scholars who specifically asked, in _Bond_, for this exact discussion, Scalia, Thomas and Alito.

On Page 30 of this government's predictable response, they imply that the petitioner's Constitutional stance is a repeat of

85

Ground 3, which is the jurisdictional reach of the statute and its interpretation. That is Untrue.

Pages 31-33 of this government's response is utterly incomprehensible claims of assertions the petitioner never made and non-responses to non-issues that do not in any way address the actual and very simple constitutional issues of the petitioner, outlined by Supreme Court Justices Alito, Thomas and Scalia.

Since their response to the Constitutional issue is as about as confusing as a fish smoking a cigarette, these two simple Constitutional defects should be (further) clarified.

A - The legislative procedure for 175 was not Constitutionally proper. Congress did not have Constitutional Authority to simply "enact" an international treaty (the Biological Weapons Convention)

1 - The Biological Weapons Convention was an international treaty, a "compact with a foreign nation" or, in this case 100 different nations, that was simply "enacted" into law after the treaty (or contract) was already written and signed.

That is not, as Justice Scalia explained, the proper Constitutional mechanism for creating legislation, or treaties.

2 - In Bond, Justices Scalia and Thomas added an additional opinion each to make clear, whether some mississippi prosecutor likes it or agrees with it or not, according to the founding document of our republic, the U.S. Constitution, there can be no such thing as a "treaty-implementing legislation" or a "legislated treaty"

3 - As Justice Scalia carefully explained in his usual and

86

wonderfully brash manner, likewise, the treaty, once signed by the 100 nations is a contract enacted, it cannot be further "enacted" (to apply to a population of non-signees) by the approval of Congress since the treaty is "already made" and therefore "not subject to any more making."

4. - The Biological Weapons Convention, was a treaty with 100 different countries and between the governments of those countries themselves. It was NOT a treaty with every citizen of those countries. It is binding on the countries who signed, not binding on the citizens who didn't. The governments themselves were the parties of the contract. A contract between two parties does not bind a third. Therefore "enacting" a treaty by an "Implementation Act" or implementing a treaty only binds those signees, those that agreed to that contract.

Only proper legislation can make valid a criminal statute, which was NOT the case with 175.

5 - Congress, through Constitutionally proper legislation can define criminal behavior and set penalties - such as the way it did with the Public Health Service Act, (42 USCS §262a) which gave rise to 175b, the Select Agent and Toxins Statute. Making 175b Constitutionally sound, but 175 unconstitutional. Proper legislation, as Justice Scalia pointed out, "requires Congress carry out its obligations and propose, debate and deliberate in the usual manner."

Additionally, the workings of treaties and legislation are powers that are necessarily kept constitutionally separate.

Therefore, according to the Constitution, 175 was never properly enacted (the way 1038 and 175b was) and is not Constitutional for those exact reasons.

6- It is not at all surprising, however, that the Mississippi prosecutors on a mission think they are right and the U.S. Supreme Court Justice's cogent and well prepared stance is wrong. Apparently, everyone is wrong except these prosecutors.

B - A treaty, and therefore any statutes tied to it, must involve matters of International intercourse.

1- On page 34 of this governments response, the respondent almost addresses this issue as it was raised in the 2255 Filing, yet still finds a way to change the discussion and not actually respond.

In the real world, a "response" should actually respond to the issues raised in the Filing, not pretend the petitioner said something he didn't.

They falsely claim the petitioners Constitutional stance regarding geographical jurisdiction as:

"arguing that 18 USC§175 does not confer domestic jurisdiction. Dutschke is a national of the United States, and the President, Senator and judge targeted by" (the mailer, not Dutschke) "are also nationals of the United States."

This is horribly misleading as to the actual discussion, but they continue:

"The" (substance we want everyone to think is "ricin" toxin even though it was never claimed that by the petitioner and was, in fact, completely harmless) "was produced in the United States and it was mailed in the United States."

Their desparate scheme to manipulate and color the Constitutional issue is transparently vapid.

a - First, where it was mailed and who received the KC letters (that did NOT contain anything toxic) is of absolutely NO consequence to 175.

18 USC §175, as already demonstrated, does not cover mailing. The proper (according to 27 other judges) indictment of §1038 actually might have (see Ground 1, Exhibit 13-14), but 175 does NOT.

In this case, the KC letters mailing is covered by the 871/876 convictions and have not yet been appealed (and cannot be until this government finally removes their obstacle and returns ALL of the Petitioners legal notes along with the timeline evidence which proves it impossible for Dutschke to have actually been the mailer, telephone records and other exculpatory evidence that proves their far-fetched 'framing' myth to be entirely a fabrication. And a sloppy fabrication at that)

Simply, the statute, as written, of §175 has nothing at all to do with mailing. 'Production', the jurisdiction of where it was produced, would be covered by 175, if it was actually a toxic pathogen, and production was, it seems, what was actually alleged. Are they NOW trying to somehow expand both the indictment AND the law?

Clarity should have been demanded from the beginning, but one thing is certain. It matters not at all to the statute "who received" unless the "receiver" then 'possesses' and 'stockpiles' it. Who got what is meaningless.

89

b - This government's response, throughout, cannot seem to appropriately limit itself to only the matters at hand in the 2255 itself, regarding only §175. Constantly, such as the quote from the response, above, they refer to the KC letters mailing and try to use their manufactured statements as "evidence."

c - It is obvious, after reading this particular government's response, how heavily this government's conviction under 175 leans on and is dependent upon the mailing or the 871/876 convictions, things that are in NO way related to the production of a biological pathogenic weapon or germ warfare.

- For example, one of many their false and misleading discussion linking (falsely) labels and printers has absolutely nothing at all to do with the production of a "deadly toxin with no known antidote"

Such smoke in mirrors distractions are designed to distract from the FACT that there was nothing toxic at all 'produced'.

Relevant to 175 = Evidence proves there was never any production of anything toxic.

NOT relevant to 175: what color paper was used or who received a letter or labels etc...

Stop! Just stop the silly.

In doing so, this government clearly demonstrates the invalidity of the 175 indictment by its dependence on the mailings (871/876)

This is part of their scheme to wrap 'intent' into the argument because they know there simply was NO ricin toxin

90

ever produced. Neither 'intent' or the mailings are part
of the 175 language and are meaningless, by law, to
the (false) conviction.

Their dependence upon the 871/876 counts for 175 must stop.

d - It is long and well established case law:

"Each count of an indictment must be regarded as if it
were a separate indictment and must stand on its
own content without dependence for its validity on
the allegations of any other count not expressly
incorporated." United States v Huff, 512 F2d 66, 69 (5th Cir 1975)

Yet ... here we are discussing 175 and the production
of pathogenic weapons of biological warfare that are just going
to make all mankind extinct, and these prosecutors keep
needlessly interjecting "mailed to ---"

e - This tactic of theirs is dangerous to the integrity of the system. But
because mailings or recipients are meaningless to 175 (production
of a biological weapon of germ warfare), it is dangerous to the
prosecutors as well. All they are doing is introducing multiplicity.

"The traditional test of multiplicity determines whether
each count requires proof of a fact which the other
does not."

United States v. Marquardt, 786 F2d 771, 778 (7th Cir 1986)

United States v. Kennedy, 726 F2d 546, 547-48 (9th Cir 1984)

The mailing conviction (871/876) cannot be included in
any way with the making conviction (175).

"If one element is required to prove the offense in one count which is NOT
required to prove the offense in the second count, there is no multiplicity."

United States v Briscoe, 742 F2d 842, 845 (5th Cir 1984)

91

2 - The above response by this government shows the respondent simply does not understand this well-thought out stance of U.S. Supreme Court Justice Thomas and Alito regarding domestic enforcement of an international treaty and its statute.

3 - Whether the mississippi prosecutors like it or not, U.S. Supreme Court Justices obviously agree with Dutschke as Justice Thomas stated simply:

"A treaty must relate to the external concerns of the nation as distinguished from matters of a purely internal nature"

(As does a statute designed to enforce that treaty)

How is that so hard for the mississippi prosecutor to understand?

4 - The deflective arguments used by these prosecutors in this case are frivolous and meritless. When Justice Scalia, in his wonderfully typical brash fashion, bristled at the idea that a treaty could be used to "regulate the relationship between nations and their own citizens," even the U.S. Solicitor General conceded and acknowledged "there may well be a line to be drawn."

These prosecutors, however, see lines as very grey and very wide, if they respect any lines at all.

5 - Put quite simply, an international treaty, "enacted" by congress or not, can NOT be enforced domestically.

(The Biological Weapons Convention Implementation Act was to enforce the Biological Weapons Convention)

6 - Who received letters is meaningless to 175 (the production), so the ONLY thing that matters, jurisdictionally, is where was the maker of the NON toxic substance this government, (not the petitioner) claimed was a deadly pathogen for six months publicly. In this

case, it is assumed (although even the petitioner cannot know for certain) that the harmless castor fertilizer component in the 2013 KC envelopes was likely produced in the US, likely in Mississippi.

a- This actually presents a statutory issue of jurisdiction. The exact language, as written in the statute of 175(a), gives extra ~~terpitoral~~ territorial jurisdiction.

This makes sense since 175 is to enforce an international treaty.

But the ONLY jurisdiction explicitly mentioned in the statute is EXTRA territorial jurisdiction.

When jurisdiction of a statute is not explicitly mentioned, it can be assumed to have effect "inside the US." However, when jurisdiction IS explicitly written into a statute's definition, That definition must be explicitly followed just like any other part of that statutes language.

The ONLY jurisdiction defined in 175 is that Outside of US borders, explicitly stated.

This is extremely relevant considering 3 things

- The intention of treaties IS intercourse with foreign nations

- If the law makers wanted to INClude domestic jurisdiction, it would have been explicitly written into the statute's defining language, as it is with §229 F(s). Or alternatively to infer domestic only, they could have merely not addressed it explicitly at all, as in 1038, or 175b.

- To read a statute and ASSUME a meaning that's not written or is excluded is unconstitutional

7 - The arguments made by the respondent is very similar to the argument made to the U.S. Supreme Court by the U.S. Solicitor General and his team; and Justices Scalia, Thomas and Alito made very plain by their additional cogent assessment to the unanimous Bond decision the exact common sense reasons why the governments argument simply had no merit.

Justice Alito stated it as clear as possible:

"For these reasons, I would reverse petitioners conviction for constitutional grounds"

But perhaps all nine of the Justices of the U.S. Supreme Court, who did not disagree with Bonds constitutional arguments, Roberts, Kennedy, Ginsburg, Breyer, Sotomayor, Kagan, Scalia, Thomas and Alito are all wrong and this prosecutor is right.

The question is, which of them is a more trusted Constitutional sentry and scholar? This prosecutor, or everyone else?

94

X    There is no ambiguity in the statutes

Grounds 1 (Actual Innocence), 2 (citation error) naturally spill over into Ground 4 (ineffective counsel). But Grounds 1, 2 and 3, then, are all about the exact statutory language of the law, as it is written.

In Ground 3 (interpretive argument) the U.S. Supreme Court Justices make very clear that the statutory language cannot be interpreted to be arbitrarily broad, ( a weapon must be harmful) and ( a small "simple" event has nothing at all to do with the actual endangerment of a war crime).

While it seems true that some district judges do anything they can to agree with whatever the prosecutor they see daily wants, most judges are "sticklers" for what the actual language, plainly written into law, actually says, including, as evidenced in Hale and Bond, the higher courts such as the U.S. Supreme Court.

"When a statute includes an explicit definition, we must follow that definition." Stenberg v Carhart 530 US 914, 942 (2000) As such, nothing should ever be "read into" or "assumed" or "presumed" or interpreted how a prosecutor sees fit to fit his own narrative.

"A criminal statute must clearly define the conduct it proscribes, if it does not give a person of ordinary intelligence fair notice of its scope, it denies due process" (Scalia, in Bond) quoting United States v. Batchelder 442 US 114, 123 (1979)

The statutes, as written into law, make absolutely clear to any "person of ordinary intellect" that the §175 conviction for a harmless substance (production) simply cannot be supported.

The actual, already admitted evidence by this governments own "sophisticated

laboratories" Coupled with the actual language of the actual statutes, as written, simply do NOT line up, by any stretch of the imagination, and these prosecutors have shown themselves to be pretty imaginative.

In addition, a reading of this government's response revives the confusion as to what the government is purporting (this week) they believe. Are they now back to the absurd and already debunked claim that there really existed a deadly, toxic, disease-causing infectious agent and pathogen of germ warfare?

This Mythology was more busted than big foot. However, if that is what they are back to claiming, then evidentiary hearings must be held.

Or are they still trying to claim, "well we know there really is no actual ~~tooth fairy~~ biological weapon, but it doesn't matter because we really want to win and score another for us." This government's response does not actually clarify, it does not take a position. It takes ALL positions. Therefore, it is not really a response, is it?

A-       However, after all their distractions and legal contortions, it may somehow still be possible to wonder if the statute (175) should just assume something it does not say, the inclusion of 'ricin toxin', although it is specifically defined by the US government and lawmakers as included elsewhere. Or it may be somehow remotely possible to question whether the production of something NON-toxic should be treated as though it is; questioning then, that the thresholds for legal toxicity or the statutory requirements for toxicity might not mean what it actually says, in writing. Although it would be doubtful anyone could possibly be fooled, at this point, by the prosecutors constant slight-of-hand, if there somehow is ANY ambivalence toward the actual language at all,

then, of course, the rule of lenity should prevail.

    Although there is NO statutory ambiguity here, it is clear and pointed out in this reply that these prosecutor's tactics have been and remains, to create exactly that kind of statutory confusion.

    So if this court feels at all tempted to steer from what is the simple straight-forward path that is this case and fall prey to this government's beckoning into their labyrinthine loopings which muddle the evidence and the law into utter incomprehension, then the blur from their smoke may be mistaken for ambiguity.

"The government's theory here would upend ordinary principles of interpretation. The rule of Lenity requires interpreters to resolve ambiguity in criminal statutes in favor of the defendants. Deferring to the (prosecutors) expansive views of these statutes would turn their normal construction upside-down, replacing the doctrine of Lenity with a doctrine of Severity." (Scalia)

    Crandon v. United States 494 US. 152, 178 (1990)

B - The rule of Lenity requires ANY statutory ambiguities ARE to be resolved in favor of defendant.

    Babbit v. Sweet Home Chapt. of Communities for a Greater Oregon, 515 US 687, 704 n. 18 (1995)

    Chevron USA Inc v. Nat. Resources Defense Counsel Inc. 467, US Supreme Ct 37, 842-43 (1984

    Bifulco v. US. 447 US 381, 87 (1986)

    US v. Rodriguez 553 US 377, 405 (2008)

    Sash v Zenk F3d 132,134 (2nd Cir 2005)

    United States v. Kochler 973 F.2d 132, 135 (2nd Cir 1992)

    Dolan v. United States 130, Supreme Court 2533, 2544 (2010)

Barber v. United States  130 S. Ct. 2499, 2508-09 (2010)

Muscarello v. United States  524 (sup) 125, 139 (1998)

United States v. Hayes, 555 S. Ct. 415, 1079-129 S. Ct. 1088-89 (2009)

There is no doubt at all that the arguments of this particular governments response twist and obfuscate the actual, written meanings and presume a statute (175) "means" things it does not actually say.

"Where a party is attempting to engraft an illogical requirement to a statute, it may be subject then to the rule of lenity."

Salinas v. United States 522, US 52, 66 (1997)

United States v. Green  231 F.3d 77, 81-82 (2nd Cir 2000)


As U.S. Supreme Court Justice Marshall observed -

"... The rule of lenity has always been reserved ... For those situations in which a reasonable doubt persists about a statutes intended scope even After resort to the language, structure, legislative history and motivating policies of the statute"

Maskal v. United States, 498 US 103 (1990)

And of course other vigilant courts concur -

United States v. Mead Corp. 553 US 218, 226-27 (2001)

United States v. Nixon  418 US 683, 695-96 (1974)

Williams v. Pierce  708, F2d 57, 63-64 (2nd Cir 1983)


A true and fair reading of the statutes should confirm Grounds 1, 2 and 4, even without the rule of lenity, but if this governments obvious attempts to create interpretive confusion has created any doubt, then the rule of lenity should help the Court clear the smoke away.


98

In Summation, the decision before the Court is not nearly as complicated as this particular government presents it to be. It is as simple as asking the following questions, already answered by the actual evidence and actual language of the law:

- Does this case actually involve a deadly pathogenic disease-causing agent of germ warfare?

    No.

- Does the Statute of 175 contain (as 229 does) any specific language that includes "ricin toxin" even if it did exist?

    No.

- Does the mailing or receiving of a letter have anything at all to do with 175 (as it does in 1038)?

    No.

- Was it the intent of 100 nations of the treaty or the intent of Congress and President Clinton to treat a NON toxic fertilizer that is harmless the same as deadly biological germ warfare attacks?

    No.

- Does 175, in any way, allow by its exact wording, prosecution of producing a harmless substance?

    No.

- Is the clearly written prosecutorial threshold for any Statute met, even by the "Select Agent" standard this government insisted upon in its own response?

    No.

- Can a vigorous defense of an alleged offense be executed by counsel if he does not know the laws that actually control that offense?

    No.

— Is it proper Constitutionally to create legislation by "enacting" a treaty?

No.

— Is a treaty, and its enforcing statute, that involves Foreign intercourse domestically enforcable?

No.

— Was petitioner Dutschke Actually guilty of manufacturing a deadly, toxic infectious, disease-causing pathogen, as required by 175?

No.

Or to put it the other way, is just as simple:

— Has it been demonstrated that there was no actual deadly toxin produced in this case?

Yes

— Has it been demonstrated by the actual written language of the law, that actual 'ricin toxin' is Chemical (therefore 229) and not biological (175)?

Yes

— Has it been clearly demonstrated, by both the actual evidence and the law as written, that both the Round to Zero rule and the HHS Select Agent regulations (insisted upon now, by this government itself) completely precludes any prosecution for 'ricin'?

Yes

— Has it been shown that the law, as written, and upheld case law supports §1038 instead of a Statute to enforce an international treaty designed to prevent infectious pandemics as a crime of war?

Yes

— Did the U.S. Supreme Court, in a unanimous ruling, make clear

100

that a "simple assault" (by chemicals that actually were harmful, although mildly so, had "nothing at all to do with the proliferation" of an international war crime?

Yes.

Isn't it reasonably expected that effective defense counsel actually be familiar with the laws of an allegation he is defending against?

Yes.

Has the U.S. Supreme Court, who deals daily with real constitutional matters, Thomas, Scalia and Alito made perfectly clear the Constitutional defects?

Yes

Are the U.S. Supreme Court Justices likely to be more qualified, more reliable and more impartial Constitutional Scholars than these current prosecutors?

Yes.

Including the 16 judges specifically listed (on pages 55-57 of this reply), who all upheld 1038 over 175 (including the Hale case), and the 9 U.S. Supreme Court judges of Bond, are there at least 25 U.S. Federal judges that are in agreement with Dutschke's overly explained stance?

Yes.

Has it been shown and is it uncontested by this government, that this government has breached the plea agreement?

Yes

Has the petitioner clearly shown that the 5 grounds selected are not subject to the waiver (of the broken plea agreement)?

Yes

Interpreting the law as written, doesn't that leave petitioner Dutschke

101

actually innocent of 175?

Yes.

Did the petitioner show and the record reflects, he KNEW the substance of the 2013 kc letters was likely a harmless castor fertilizer?

Yes.

Did he maintain that position to counsel?

Yes.

Does the governments own "sophisticated assays" confirm that to be true?

Yes.

Do ALL of the actual factual evidence and the law, as written, support the petitioner?

Yes.

Has this government utterly failed, in its response, to adequately and properly address a single issue?

Yes

Is this conviction (of 175) completely preposterous and injudicious?

Yes.

Accordingly, this Court should follow the law, as it is explicitly written, and the unignorable benchmark ruling, now case law, by the unanimous United States Supreme Court Justices and reverse the petitioners false conviction of 18 USC § 175.

Respectfully Submitted, this 13th day of August 2015.

James Everett Dutschke

James Everett Dutschke

Judge Aycock,

I fully understand you may find it overkill for me to reply to every single sentence of the prosecutors response,

I did not enjoy doing it.

However, their response was so full of non-issues, non-responses, and false information that I felt if I did NOT reply to every misleading detail it would become legally accepted.

That was, I believe, their intent and a common tactic of theirs. Therefore this reply is incredibly detailed.

I know it may take longer, but please read and verify every single word of this reply, as each word was written for a reason.

My biggest fear is summary treatment.

There are 14 exhibits and 102 pages of the reply, so obviously I have put in a lot of work; work that, if it was done two years ago, we would not have ever had to deal with again.

And doing this under these conditions, as you might imagine, is nearly impossible.


James Everett Dutschke


These prosecutors had the chance, in their response, to prove me wrong about one single thing. They failed to do so, and in fact, as you will see and conclude when you finish this very, very detailed reply, not only did they NOT prove me wrong about a single thing, but, strangely enough, only proved me right.

Timely Filing declaration

In accordance with §2255 Rule 3(d),

This traverse reply to the governments response
was deposited into the mail system and deemed
as filed on 8-14-15 before the
mailing deadline and with proper U.S. postage.


Signed this day - Friday 14th of August, 2015

James Everett Dutsuhe


602 pages of the response
plus Exhibits 1-14

Cm-15-621-130-0

Name: James Everett Dutschke
Reg. No: 15536-042
U.S. PENITENTIARY MAX
P.O. BOX 8500
FLORENCE, CO 81226-8500

X-RAYED

7015 0640 0005 8892 8492

United States District Court
Office of The Clerk
—2255 Reply—

911 Jackson Ave
Suite 369

Oxford, MS
38655

